# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

PARIS ANDERSON,

*Plaintiff-Appellee,*

vs.

ANTHONY RODRIGUEZ and MIAMI-DADE COUNTY,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Florida
No. 21-CV-24438-KMW

## INITIAL BRIEF FOR APPELLANTS

RHEA P. GROSSMAN, P.A.
2650 West State Road 84, Suite 103
Fort Lauderdale, Florida 33312
(954) 587-8488


RHEA P. GROSSMAN
*Counsel for Anthony Rodriguez*

GERALDINE BONZON KEENAN
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

ZACH VOSSELER
Assistant County Attorney
*Counsel for Miami-Dade County*

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the Appellants certify that the following persons and entities may have an interest in the outcome of this case:

1. Anderson, Paris, *Plaintiff-Appellee*

2. Andrew B. Greenlee, P.A., *Counsel for Plaintiff-Appellee*

3. Blake, Stanford, *Mediator*

4. Bonzon Keenan, Geraldine, *Miami-Dade County Attorney*

5. Greenlee, Andrew B., *Counsel for Plaintiff-Appellee*

6. Grossman, Rhea, *Counsel for Defendant-Appellant Anthony Rodriguez*

7. Hale & Monico, LLC, *Counsel for Plaintiff-Appellee*

8. Louis, Hon. Lauren Fleischer, *United States Magistrate Judge*

9. Marx, Jason, *Counsel for Plaintiff-Appellee*

10. Miami-Dade County, *Plaintiff-Appellant*

11. Miami-Dade County Attorney's Office, *Counsel for Defendant-Appellant Miami-Dade County*

12. Rhea P. Grossman, P.A., *Counsel for Defendant-Appellant Anthony Rodriguez*

13. Rodriguez, Anthony, *Defendant-Appellant*

14. Sherris Legal, P.A., *Counsel for Plaintiff-Appellee*

15. Sherris, Mary, *Counsel for Plaintiff-Appellee*

16. Vosseler, Zach, *Counsel for Defendant-Appellant Miami-Dade County*

17.   Williams, Hon. Kathleen M., *United States District Judge*

No corporation has an interest in the outcome of this case.

          */s/ Rhea P. Grossman*
          Rhea Grossman
          *Counsel for Appellant Anthony Rodriguez*

          */s/ Zach Vosseler*
          Zach Vosseler
          Assistant County Attorney
          *Counsel for Appellant Miami-Dade County*

## STATEMENT REGARDING ORAL ARGUMENT

The defendants-appellants respectfully request oral argument, as they believe it would significantly aid the Court's decisional process. *See* 11th Cir. L.R. 28-1(c), 34-3(b)(3). Anthony Rodriguez raised qualified immunity as the basis for the underlying motion for summary judgment. Yet the district court ignored this Court's precedent holding that if an officer's use of force is *de minimis*, the factors announced by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), don't apply. The district court also improperly determined that Rodriguez's conduct violated clearly established law. Although it announced several general principles, it did not show how those principles applied with obvious clarity to the specific context of this case. Oral argument will allow the defendants to address questions the Court may have regarding the applicability of the *de minimis* force exception and the qualified immunity defense.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT .........................C1

STATEMENT REGARDING ORAL ARGUMENT ........................... i

TABLE OF AUTHORITIES ...........................................iii

JURISDICTIONAL STATEMENT ................................................ix

STATEMENT OF THE ISSUES ...................................................1

STATEMENT OF THE CASE

    I.   Factual Statement ........................................................ 2

    II.  Course of Proceedings and Disposition Below ........................... 6

    III. Standard of Review..................................................7

SUMMARY OF THE ARGUMENT .............................................. 8

ARGUMENT—The District Court Erred in Denying Qualified Immunity ..... 11

    I.   Rodriguez's undisputed conduct was reasonable under
        the Fourth Amendment ..................................................... 12

        A.   The single slap was a *de minimis* use of force ......................... 13

        B.   Grabbing Anderson's hair was a *de minimis* use of force............. 21

    II.  Rodriguez's undisputed conduct was not clearly established
        as a violation of the Fourth Amendment ................................... 25

        A.   Anderson cited no case law with indistinguishable facts finding
            that similar conduct violated the Constitution ....................... 26

        B.   Neither Anderson nor the district court demonstrated how
            the general principles of law they relied on apply to the
            specific context of this case .............................................. 30

CONCLUSION ...................................................................... 33

CERTIFICATES .................................................................... 35

# TABLE OF AUTHORITIES

Cases

*Alston v. Swarbrick,*
954 F.3d 1312 (11th Cir. 2020) ...................................... 22, 23, 24, 25, 30

*Anthony v. Schackmann,*
No. 07-0698, 2009 WL 1065071 (D. Or. Apr. 17, 2009), *aff'd,*
402 F. App'x 207 (9th Cir. 2010) .............................................. 29, 30

*Baker v. City of Madison,*
67 F.4th 1268 (11th Cir. 2023) ..................................................... 13

* *Baxter v. Roberts,*
54 F.4th 1241 (11th Cir. 2022) ................................... 7, 8, 16, 20, 26, 28

*Bell v. Wolfish,*
441 U.S. 520 (1979) ............................................................... 14

*Bradley v. Benton,*
10 F.3d 1232 (11th Cir. 2021).................................................. 30, 31

*Brooks v. Miller,*
78 F.4th 1267 (11th Cir. 2023) ....................................................11

*Brosseau v. Haugen,*
543 U.S. 194 (2004) ............................................................ 32, 33

*Brown v. Bellinger,*
843 F. App'x 183 (11th Cir. 2021) .................................................. 20

*Charles v. Chambers,*
No. 23-11636, 2024 WL 4266842 (11th Cir. Sept. 23, 2024) ..................... 15

*Christmas v. Harris County,*
51 F.4th 1348 (11th Cir. 2022)...................................................... 12

*City & County of San Francisco v. Sheehan,*
575 U.S. 600 (2015) ................................................................ 17

*City of Miami v. Sanders,*
672 So. 2d 46 (Fla. 3d DCA 1996)................................................... 12

iii

*Corbitt v. Vickers*,
  929 F.3d 1304 (11th Cir. 2019) ................................................ 26, 29

*Crocker v. Beatty*,
  995 F.3d 1232 (11th Cir. 2021) ............................................. 27, 31, 32

\* *Croom v. Balkwill*,
  645 F.3d 1240 (11th Cir. 2011) ............................................ 14, 18, 19

*English v. City of Gainesville*,
  75 F.4th 1151 (11th Cir. 2023) ................................................. ix, 7

*Franklin v. Popovich*,
  111 F.4th 1188 (11th Cir. 2024) ..................................................11

*Garcia v. Casey*,
  75 F.4th 1176 (11th Cir. 2024) ................................................... 27

*Garczynski v. Bradshaw*,
  573 F.3d 1158 (11th Cir. 2009) .................................................. 17

*Gold v. City of Miami*,
  121 F.3d 1442 (11th Cir. 1997) .........................................15, 19, 20, 25

*Graham v. Connor*,
  490 U.S. 386 (1989) ............................................................ 14

*Hadley v. Gutierrez*,
  526 F.3d 1324 (11th Cir. 2008) .............................................. 27, 29

*Hall v. Billups*,
  No. 14-0196, 2017 WL 9471783 (M.D. Ala. Feb. 28, 2017), *adopted*,
  2017 WL 1170859 (M.D. Ala. Mar. 29, 2017) ..................................... 28

*Harding v. Gould*,
  No. 22-6285, 2024 WL 3742688 (S.D.N.Y. Aug. 9, 2024) ....................... 28

*Ingraham v. Wright*,
  430 U.S. 651 (1977) ........................................................... 14

*Ingram v. Kubik*,
  30 F.4th 1241 (11th Cir. 2022) ................................................. 31

*Jarrard v. Sheriff of Polk County*,
  115 F.4th 1306 (11th Cir. 2024) ........................................... 25, 26, 29

*Johnson v. City of Atlanta*,
    107 F.4th 1292 (11th Cir. 2024) ................................................. 11, 20

*Jones v. City of Dothan*,
    121 F.3d 1456 (11th Cir. 1997) ..............................................15, 20, 25

*Jones v. Fransen*,
    857 F.3d 843 (11th Cir. 2017) ..........................................................ix

*Kimbrel v. Clark*,
    385 So. 3d 1124 (Fla. 1st DCA 2024) ............................................. 12

*King v. Pridmore*,
    961 F.3d 1135 (11th Cir. 2020) ...................................................... 30

*Kisela v. Hughes*,
    584 U.S. 100 (2018) ................................................ 26, 27, 31, 33

*Leary v. Livingston County*,
    528 F.3d 438 (6th Cir. 2008) ........................................................ 28

*Lee v. Ferraro*,
    284 F.3d 1188 (11th Cir. 2002) ..................................................... 24

*Lester v. City of Tavares*,
    603 So. 2d 18 (Fla. 5th DCA 1992) ................................................ 12

*Lewis v. Huebner*,
    No. 17-2101, 2020 WL 1244254 (S.D.N.Y. Mar. 16, 2020) ....................... 28

*Malley v. Briggs*,
    475 U.S. 335 (1986) ....................................................................11

*Mendoza v. Dickson*,
    No. 20-0214, 2021 WL 6494945 (N.D. Fla. Dec. 7, 2021), *adopted sub nom.*
    *Mendoza v. Inch*, 2022 WL 124165 (N.D. Fla. Jan. 13, 2022) ..................... 28

*Merricks v. Adkisson*,
    785 F.3d 553 (11th Cir. 2015) ............................................. 28, 29, 30

*Montefu Acosta v. Miami-Dade County*,
    97 F.4th 1233 (11th Cir. 2024) ...................................................... 31

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ................................................................. 32, 33

*Neal v. Miller*,
    778 F. Supp. 378 (W.D. Mich. 1991) ................................. 28

\* *Nolin v. Isbell*,
    207 F.3d 1253 (11th Cir. 2000) .............................. 14, 15, 29

*Oliver v. Fiorino*,
    586 F.3d 898 (11th Cir. 2009) ..................................... 26

*Patel v. City of Madison*,
    959 F.3d 1330 (11th Cir. 2020) ................................... 31

*Pierre v. Padgett*,
    808 F. App'x 838 (11th Cir. 2020) ................................ 20

*Pinto v. Collier County*,
    No. 21-13064, 2022 WL 2287171 (11th Cir. June 24, 2022) ............. ix, 12, 20

*Pipino v. Delta Air Lines, Inc.*,
    196 F. Supp. 3d 1306 (S.D. Fla. 2016) ............................ 21

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014) ........................................... 25, 33

\* *Post v. City of Fort Lauderdale*,
    7 F.3d 1552 (11th Cir. 1993) ................................ 22, 23, 30

*Powell v. Snook*,
    25 F.4th 912 (11th Cir. 2022) ........................... 11, 12, 26, 30

*Prosper v. Martin*,
    989 F.3d 1242 (11th Cir. 2021) ................................... 26

*Purcell v. City of Fort Lauderdale*,
    — F. Supp. 3d —, 2024 WL 4489527 (S.D. Fla. Oct. 15, 2024) ................. 28

*Quinette v. Reed*,
    805 F. App'x 696 (11th Cir. 2020) ............................... 27

*Rodriguez v. Farrell*,
    280 F.3d 1341 (11th Cir. 2002) ............................ 15, 20, 25

*Santiago v. City of Yonkers*,
    No. 13-1077, 2015 WL 6914799 (S.D.N.Y. Oct. 30, 2015) ................ 28

vi

*Saunders v. Duke*,
   766 F.3d 1262 (11th Cir. 2014) ……………………………………… 24, 27

*Sebastian v. Ortiz*,
   918 F.3d 1301 (11th Cir. 2019)……………………………………… 12, 13

*Senko v. Jackson*,
   603 F. Supp. 3d 1299 (S.D. Fla. 2022) …………………………………… 31

*Shaw v. Calhoun State Prison*,
   No. 21-11223, 2022 WL 17333081 (11th Cir. Nov. 30, 2022)………………… 20

*Shelby v. Enlers*,
   No. 09-0221, 2010 WL 4536777 (S.D. Miss. Sept. 24, 2010), *aff'd*,
   429 F. App'x 392 (5th Cir. 2011) ……………………………………… 29

*Smith v. Campbell*,
   295 F. App'x 314 (11th Cir. 2008) ……………………………………… 21

*Stephens v. DeGiovanni*,
   852 F.3d 1298 (11th Cir. 2017) ………………………………………… 19, 21

*Thornton v. City of Macon*,
   132 F.3d 1395 (11th Cir. 1998) …………………………………………31, 32

*Tillis ex rel. Wuenschel v. Brown*,
   12 F.4th 1291 (11th Cir. 2021) ………………………………………… 13, 14

*Ussery v. Houston County*,
   No. 24-0116, 2024 WL 4424794 (M.D. Ga. Oct. 4, 2024) ………………… 32, 33

* *Vinyard v. Wilson*,
   311 F.3d 1340 (11th Cir. 2002) ……………………………… 22, 23, 24, 27, 29, 30

*White v. Pauly*,
   580 U.S. 73 (2017) ……………………………………………………… 33

*Woodruff v. City of Trussville*,
   434 F. App'x 852 (11th Cir. 2011) ……………………………………… 15

*Youmans v. Gagnon*,
   626 F.3d 557 (11th Cir. 2010)…………………………………………… 30, 31

*Zivojinovich v. Barner*,
   525 F.3d 1059 (11th Cir. 2008) ………………………………………… 16

## Statutes

28 U.S.C. § 1291 ...................................................................ix

28 U.S.C. § 1331 ...................................................................ix

28 U.S.C. 1367(a) ................................................................ix

42 U.S.C. § 1983 ..............................................................ix, 7

Fla. Stat. § 843.01 ............................................................. 13

Fla. Stat. § 843.02 ............................................................. 13

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff Paris Anderson asserted claims under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment. The district court had subject matter jurisdiction over her pendant state law claims pursuant to 28 U.S.C. § 1367(a).

This Court has jurisdiction over Anthony Rodriguez's appeal pursuant to 28 U.S.C. § 1291 because the district court denied his motion for summary judgment raising qualified immunity as a defense to Anderson's Fourth Amendment excessive force claim. *English v. City of Gainesville*, 75 F.4th 1151, 1155–56 (11th Cir. 2023).

The Court has jurisdiction over Miami-Dade County's appeal under the pendant appellate jurisdiction doctrine, which allows the Court to "address otherwise non-appealable orders if they are inextricably intertwined with an appealable decision," such as when the two orders "implicate the same facts and the same law." *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017) (cleaned up). The portion of the district court's order denying summary judgment to Miami-Dade County on the state-law battery claim is inextricably intertwined with the portion denying qualified immunity to Rodriguez on the federal excessive force claim because they implicate the same facts and similar law. Both defendants argued that Rodriguez's undisputed actions were *de minimis* uses of force. *See Pinto v. Collier County*, No. 21-13064, 2022 WL 2289171, at *7 (11th Cir. June 24, 2022) (explaining that if a use of force "is *de minimis* and reasonable under the circumstances, it [is] not 'clearly excessive' for purposes of [a] Florida battery claim").

# STATEMENT OF THE ISSUES

The defendants, former Miami-Dade police officer Anthony Rodriguez and Miami-Dade County, appeal the district court's order denying their motion for summary judgment, in which Rodriguez raised qualified immunity as a defense to plaintiff Paris Anderson's Fourth Amendment claim for excessive force, and in which the County sought summary judgment on Anderson's battery claim under Florida law.

The issues on appeal are:

1.a.  This Court has held that grabs, pushes, pulls, punches, painful searches, painful handcuffing, and slamming plaintiffs against vehicles and walls in connection with a lawful detention are *de minimis* uses of force that do not violate the Constitution, especially where the resulting physical injury is minor. Rodriguez slapped Anderson in the face one time with an open hand, resulting in redness and swelling that resolved with self-treatment in two days. Did the district court incorrectly rule that Rodriguez's undisputed conduct was not a *de minimis* use of force?

1.b.  The Court has held that force used after a plaintiff has been handcuffed can also be *de minimis*. While Rodriguez escorted Anderson after she was handcuffed, she slowed down and turned to yell questions and statements at another officer. Rodriguez grabbed Anderson's hair and turned her head forward. She did not sustain any physical injury. Did the district court incorrectly rule that Rodriguez's undisputed conduct was not a *de minimis* use of force?

2.a.  To satisfy one of the methods for demonstrating that an officer's conduct was a clearly established constitutional violation for purposes of overcoming qualified

immunity, a plaintiff must point to binding precedent finding a violation under indistinguishable facts. The cases Anderson cited involve different factual circumstances and different uses of force than those here. Did the district court err in denying qualified immunity to Rodriguez?

2.b.  To satisfy another method, a plaintiff must point to a broad statement of principle that should control the novel facts of the situation and show how the principle would apply with obvious clarity to the specific context. Anderson and the district court both stated several principles, but did not explain how those principles would squarely govern the facts here, such that every reasonable officer would know that Rodriguez's conduct would violate the Constitution. Did the district court err in denying qualified immunity?

## STATEMENT OF THE CASE

### I.  Factual Statement

On June 30, 2020, at 7:00 a.m., Paris Anderson and her friends entered Miami International Airport to depart home to Chicago after a weeklong trip. Her friends left throughout the day, but her flight on American Airlines wasn't scheduled to leave until 8:00 p.m. So, at around noon, she went to a TGI Fridays inside the terminal. Over the next seven hours, she consumed four shots of Hennessy. Before heading out, she ordered a fifth shot to go. She felt "tipsy" and rated her level of intoxication at a 4 on a scale of 1 to 10.[1]

---

[1]  App. 1135, 1167–68. ("App." citations refer to pages of the forthcoming Appendix.)

When Anderson got to the gate, the agent informed her that the airplane doors had closed. She proceeded to the rebooking counter, where she was angered to learn that the flight she missed was the last one going to Chicago that day. When a manager intervened to calm her down, Anderson became "irate." She attempted to snatch paperwork from his hand, then lifted the dividing rope and crossed behind the counter—an area restricted to passengers—prompting the manager to call the Miami-Dade Police Department's Airport District police.[2]

Officers Anthony Rodriguez and Ricardo Alvarez responded to the disturbance, wearing face masks as required by airport regulations during the COVID-19 pandemic. As they approached the counter, they heard Anderson, who was not wearing a face mask (and who remained unmasked throughout the encounter) say, "the fuck is you talking about? Give me my ticket."[3]

An employee told Rodriguez that Anderson was intoxicated. The manager said that she had come around the counter and tried to snatch her old boarding pass out of his hand. He said Anderson was "out of control" and advised that she would not be flying with American Airlines that day. Once Rodriguez received that notice that the airline was declining to honor her ticket, he and Alvarez, as airport police officers, had a legal duty to escort Anderson out of the secure side of the terminal.[4] Rodriguez walked over to where Alvarez was trying but failing to calm Anderson. He observed

---

[2]  App. 1135–36, 1168.

[3]  App. 1136, 1168; Rodriguez BWC 1, at 0:00–:23 (App. 166); Alvarez BWC, at 0:00–:53 (App. 166).

[4]  App. 1136, 1168; Rodriguez BWC 1, at 0:25–1:38.

Anderson speaking in a raised voice while jumping up and down. Rodriguez informed her that she would not be flying with American Airlines.[5]

He issued five commands to Anderson, all of which she ignored. First: "Get your bag. We gotta go. We gotta get out of here." In response, Anderson asked how she was going to get home to Chicago. Second: "Get your bag; let's go. Get your bag; let's go." In response, Anderson yelled out that she didn't have a ticket for any other airline. Third: "Get your bag." In response, Anderson talked about her checked bags on the flight she missed. Fourth: "We gotta go. We gotta go." Anderson said nothing, then ignored a request from Alvarez to get her bag. She raised her voice to yell out, "How's am I not making sense?" Rodriguez gave the fifth command—"So, get your bag. Let's go."—and took a step back so that Anderson could walk past him to get her bag. In response, she looked over at the rebooking counter toward the manager and said, "I should punch him in his fucking face. Give y'all a reason to lock me up."[6]

After a brief exchange, Rodriguez then gave a sixth and final command: "You're not doing nothing. Get your bag." In response, Anderson pointed at him and, as she stepped toward him until she was yelling—still unmasked—inches from his face, shouted, "You acting like you white when you really black." Rodriguez squared his stance and asked, "What you wanna do?" Anderson responded with "Don't walk up on me, for real. What you wanna do?" She then moved even closer to his face.[7]

---

[5]  Rodriguez BWC 1, at 3:33–:44; Alvarez BWC, at 1:38–4:14.

[6]  Rodriguez BWC 1, at 3:44–4:50, Alvarez BWC, at 4:14–5:20.

[7]  Rodriguez BWC 1, at 4:50–:59; Alvarez BWC, at 5:20–5:29; Vega BWC 2:03–:09 (App. 166); App. 475, 665.

Rodriguez took immediate action to neutralize the situation. He used a single distractionary blow—an open-hand slap to the left side of Anderson's face with his right hand—to catch her off-guard so that he and the other officers could take her down and handcuff her. Rodriguez brought Anderson to the floor, and Alvarez and Officer Gary Vega—who had arrived as backup—assisted with handcuffing her.[8]

The officers lifted Anderson up and began to escort her out of the airport. As they walked, Officer Vega's body-worn camera video shows her squirm her right arm in his grip, prompting him to command her, "Stop."[9]

When Alvarez caught up to Rodriguez and Anderson, bringing along the luggage he believed was Anderson's, she shouted at him in a loud volume, "Could you get my white bags that I spent my money on? I spent money in this airport. That's not my luggage! That's not my luggage. I'm telling you right now, that's not mine." Alvarez asked, "Is that your purse?" She responded, in an increasing volume, "That's my purse but that's not mine. The white bags with all my identification is IN THERE! COULD YOU GO BACK AND GET MY STUFF?!" As she shouted that last sentence, Rodriguez's body-worn camera video shows her slowing down and moving her left arm inside his grip. She yelled out, "MY IDENTIFICATION IS IN THERE!" Concerned that the maskless Anderson might eject spittle on him when she yelled, exposing him to a COVID-19 infection, Rodriguez grabbed her hair, turned her head

---

[8] Rodriguez BWC 1, at 4:59–5:25; Alvarez BWC, at 5:29–:55; Vega BWC 2:09–:31; App. 503.
[9] Vega BWC, at 4:54–:58.

forward and commanded her, "Walk, walk, walk." Within twelve seconds, he took his hand off her hair.[10]

They soon arrived at Rodriguez's patrol car parked outside the airport. Rodriguez and Alvarez placed Anderson inside and transported her to jail.[11] Anderson was charged with disorderly conduct and battery on a law enforcement officer, but the State Attorney's Office took no action on the charges.[12] Prosecutors declined to file charges against Rodriguez over his conduct, stating, "The facts of this incident are consistent with a justifiable use of force."[13]

The only physical injury Anderson suffered was swelling and redness to her face from the slap that lasted "maybe two days" and resolved with "self-treatment" that included "witch hazel, peroxide, and stuff like that."[14] Although she claims she visited an emergency room after she returned home to Chicago, she was not treated there.[15] She never produced any record evidence of any treatment, nor photographs of the alleged swelling and redness.[16]

## II.   Course of Proceedings and Disposition Below

On December 23, 2021, Anderson filed suit in the U.S. District Court for the Southern District of Florida.[17] She amended the complaint on August 29, 2022,

---

[10] Alvarez BWC, at 9:50–10:40; Rodriguez BWC 2, at 0:00–:48; App. 504.
[11] Rodriguez BWC 2, at 4:00–7:02 (App. 166); Alvarez BWC, at 13:30–17:14.
[12] App. 1140–41 ¶ 78, 1174 ¶ 78.
[13] App. 309.
[14] App. 1141 ¶ 79; App. 215:1–7, 239:12–15, 241:6–13.
[15] App. 238:18–239:15.
[16] *See* App. 309 n.1.
[17] App. 1–4.

asserting a Fourth Amendment excessive force claim against Rodriguez and four claims against Miami-Dade County: battery, negligent failure to train, a 42 U.S.C. § 1983 municipal liability claim alleging an unconstitutional policy or custom, and a § 1983 municipal liability claim alleging failure to train.[18] The County moved to dismiss, and the district court granted it in part, dismissing the § 1983 failure to train claim in full and the negligent failure to train claim in part.[19]

On July 5, 2024, the County and Rodriguez jointly moved for summary judgment.[20] Rodriguez expressly raised qualified immunity as a defense to Anderson's excessive force claim.[21] On August 12, the district court granted summary judgment to the County on the § 1983 policy or custom claim and the remainder of the negligent failure to train claim but denied qualified immunity to Rodriguez on the excessive force claim and denied summary judgment to the County on the battery claim.[22] This interlocutory appeal from that order timely follows.

## III. Standard of Review

The Court reviews a district court's denial of summary judgment based on qualified immunity *de novo*. *English v. City of Gainesville*, 75 F.4th 1151, 1155–56 (11th Cir. 2023). It views the evidence, draws all reasonable factual inferences, and resolves all reasonable doubts in favor of the nonmovant, but "only to the extent supportable by

---

[18] App. 6–40.
[19] App. 155–65.
[20] App. 168–1134 (exhibits), 1135–45 (statement of material facts), 1146–66 (motion).
[21] App. 1153–55.
[22] App. 1226–41.

the record." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (cleaned up). "Thus, in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, [the Court] accept[s] the video's depiction instead of the nonmovant's account and view[s] the facts in the light depicted by the videotape." *Ibid.* (cleaned up).

## SUMMARY OF THE ARGUMENT

The district court improperly denied qualified immunity to Rodriguez. To overcome a police officer's assertion of the qualified immunity defense, a plaintiff must make a twofold showing: the officer's actions violated a constitutional right, and it was clearly established at the time that those specific actions did so. The district court's conclusion that Anderson established both is wrong.

1. Anderson fails to demonstrate that Rodriguez's conduct violated the Fourth Amendment. For over a quarter century, this Court has declined to entertain excessive force claims predicated upon the use of *de minimis* force by law enforcement. Its decisions have held that police officers' uses of isolated grabs, pushes, pulls, slams, kicks, punches, tackles, painful handcuffing, and uncomfortable searches were all *de minimis* uses of force. Other decisions have held that uses of force administered after a plaintiff has been handcuffed were also *de minimis*, even where the Court believed the force was unnecessary. Precedent has likewise acknowledged that the minimal extent of a plaintiff's physical injury can support a determination that an officer's use of force was *de minimis*.

The two uses of force Rodriguez administered here were *de minimis* and thus reasonable under the Fourth Amendment. First, he slapped Anderson once with an

open hand after she physically resisted his commands to leave the airport by stepping toward him until she was yelling inches from his face without a face mask, shouting "Don't walk up on me, for real. What you wanna do?", and then getting even closer to his face. She suffered redness and swelling from the slap that resolved in two days with self-treatment. Second, he pulled on her hair for twelve seconds after she slowed down during the escort out of the airport and repeatedly turned her head to shout questions at Alvarez. She alleges no actual physical injury from this use of force.

Both uses of force were less severe than those this Court has upheld as *de minimis* numerous times. That Anderson suffered minimal physical injury only bolsters that finding. The Court should therefore hold that each instance of Rodriguez's undisputed conduct was a *de minimis* use of force that was reasonable under the Constitution. And if it does so, it should accordingly rule that Miami-Dade County is entitled to summary judgment because a *de minimis* use of force cannot support a battery claim under Florida law.

2. Neither Anderson nor the district court properly satisfied any method for demonstrating that Rodriguez's undisputed conduct was clearly established at the time as a violation of the Fourth Amendment. A plaintiff can satisfy this second prong of the qualified immunity analysis in one of three ways: pointing to case law with indistinguishable facts clearly establishing the constitutional right; pointing to a broad statement of principle that clearly establishes the constitutional right under the specific context of the case; or convincing the Court that the officer's conduct was so egregious that a constitutional right was clearly violated.

Anderson doesn't satisfy the first method. Although she cites case law denying qualified immunity to officers on excessive force claims, none of them have indistinguishable facts. They all involve force used after a plaintiff was handcuffed, so they couldn't have provided fair warning to Rodriguez that the force he used *before* Anderson was handcuffed would violate the Constitution. That said, they don't provide the requisite warning that the force he used *after* the handcuffing would violate the Constitution, either, because the force used in those cases—punching a plaintiff in the stomach, slamming a plaintiff's head into the ground, and pepper spraying a plaintiff in the face—are not at all materially similar to pulling on someone's hair. Many of this Court's decisions have authorized *de minimis* uses of force on handcuffed plaintiffs, including one where an officer dragged a plaintiff out of his patrol car by her hair, which reasonably could have led an officer in Rodriguez's position to the conclusion that the post-handcuffing use of force was lawful.

Both Anderson and the district court failed to satisfy the second method. It's not enough for a plaintiff or a court to cite a general statement of law; they also must show how the general statement would apply with obvious clarity to the specific situation in question. Anderson and the district court's analyses only go halfway. They state several general principles, which announce in slightly different variations that an officer violates the Fourth Amendment if he uses excessive force against a suspect who is under control, not resisting, and obeying commands. But they don't explain how those general principles squarely govern the facts of this case. None of the statements they rely on would have put every objectively reasonable officer on notice that the force

Rodriguez used in the specific situations he used them would violate the Constitution. Absent that obvious clarity, he cannot be deprived of qualified immunity.

The district court's order denying summary judgment should be reversed.

## ARGUMENT

### The District Court Erred in Denying Qualified Immunity

Anderson's excessive force claim against Rodriguez should be barred by qualified immunity. Qualified immunity protects officers acting within their discretionary authority from civil liability unless "the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Franklin v. Popovich*, 111 F.4th 1188, 1194 (11th Cir. 2024) (quoting *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022)). The defense "balanc[es] two important public interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023) (cleaned up). Under this balance, "'all but the plainly incompetent or those who knowingly violate the law' enjoy its protection." *Ibid.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To invoke the defense, all an officer must establish is that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024). Rodriguez readily satisfies this requirement, because "[i]t is well established that an arrest of someone

suspected of violating the law is within the discretionary authority of a police officer." *Ibid.*; *see also* App. 1199 n.1.

From just that minimal showing, a court is required to grant qualified immunity unless the plaintiff shows "that the defendant's actions not only violated one or more constitutional rights, but also that it was clearly established at the time that those specific actions did so." *Powell*, 25 F.4th at 920. A court may analyze the two prongs in any order, and an officer is entitled to qualified immunity if the plaintiff fails to demonstrate either. *Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022). The district court incorrectly concluded that Anderson demonstrated both.

## I.    Rodriguez's undisputed conduct was reasonable under the Fourth Amendment.

Anderson cannot meet her burden of showing a violation of a constitutional right because Rodriguez used reasonable force, both in initiating the arrest and in escorting her out of the airport.[23] "[T]he right to make an arrest necessarily carries with it the

---

[23] Miami-Dade County joins this argument because if the Court finds that Rodriguez acted reasonably *vis-à-vis* Anderson's excessive force claim, then the County would be entitled to summary judgment on her state law battery claim. "Police officers receive a presumption of good faith … as to the use of force applied during a lawful arrest." *Kimbrel v. Clark*, 385 So. 3d 1124, 1128 (Fla. 1st DCA 2024). They "are only liable for damage where the force used is 'clearly excessive.'" *Ibid.* (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)); *see also Lester v. City of Tavares*, 603 So. 2d 18, 19–20 (Fla. 5th DCA 1992) ("[O]rdinary incidents of [an] arrest … do not give rise to an independent tort."). "Thus, battery claims for excessive force are 'analyzed by focusing upon whether the amount of force used was reasonable under the circumstances.'" *Kimbrel*, 385 So. 3d at 1128 (quoting *Sanders*, 672 So. 2d at 47). Relevant here, if a use of force "is *de minimis* and reasonable under the circumstances, it [is] not 'clearly excessive' for purposes of [a] Florida battery claim." *Pinto v. Collier County*, No. 21-13064, 2022 WL 2289171, at *7 (11th Cir. June 24, 2022).

right to use some degree of physical coercion or threat thereof, and the typical arrest involves some force and injury." *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019) (cleaned up). Anderson has never alleged that her arrest for disorderly conduct was unlawful. She did not assert a false arrest claim—not that she could have, given her admission that she shouldn't have approached Rodriguez. App. 1139 ¶ 54, 1171 ¶ 54. Nor does she dispute that once the American Airlines manager told Rodriguez that she was no longer flying with the airline, Rodriguez had a legal duty as an Airport District police officer to escort her out of the secure side of the terminal. App. 1137 ¶ 23, 1169 ¶ 23.[24] So, as it is undisputed that Rodriguez had the right to arrest Anderson, which means he had the right to use at least *some* force in arresting her, the question becomes whether the amount of force he used was reasonable. It was.

## A. The single slap was a *de minimis* use of force.

Rodriguez did not use excessive force when he slapped Anderson once in the face because it was merely *de minimis* force. "In excessive force cases, the first qualified immunity inquiry—i.e., whether a plaintiff's constitutional rights were violated—is governed by the Fourth Amendment's objective reasonableness standard." *Baker v. City of Madison*, 67 F.4th 1268, 1279 (11th Cir. 2023). Although the Court construes the facts in the light most favorable to the plaintiff at summary judgment, "it determine[s] reasonableness from the perspective of a reasonable officer on the scene at the time the events unfolded" without employing "the 20/20 vision of hindsight."

---

[24] The defendants argued below that probable cause also existed to arrest Anderson for resisting with and without violence, Fla. Stat. §§ 843.01, 843.02, an argument the district court appeared to adopt, at least in part. App. 1219 n.2, 1234–35.

*Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1298 (11th Cir. 2021) (cleaned up). "Generally, [excessive force] claims require 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake'" through an examination of "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Croom v. Balkwill*, 645 F.3d 1240, 1252 & n.16 (11th Cir. 2011) (cleaned up) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"There is, of course, a *de minimis* level of [force] with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979) (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). To that end, this Court "has long declined to entertain claims of excessive force predicated upon the use of *de minimis* force by law enforcement." *Croom*, 645 F.3d at 1252; *see also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment"). The *de minimis* force principle operates as an exception to *Graham*'s general framework for analyzing excessive force claims. *See Croom*, 645 F.3d at 1252 ("the *de minimis* force exception survived *Graham*" (citing *Nolin*, 207 F.3d at 1258)). Under the exception, the use of a *de minimis* level of force does not violate the Constitution, even if a court deems the force unnecessary under the circumstances. *Ibid.*

1. This Court's reliance on the *de minimis* force exception to dispose of excessive force claims dates back decades, leading to a body of authority that condones force

much more severe than the force Rodriguez employed. In *Nolin*, the officer grabbed the 17-year-old plaintiff from behind, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, and searched his groin in a painful manner. 207 F.3d at 1255, 1258. In *Gold v. City of Miami*, the officer who arrested the plaintiff for disorderly conduct applied the handcuffs too tightly and, after the plaintiff complained of pain, refused to loosen them for over twenty minutes. 121 F.3d 1442, 1444, 1446–47 (11th Cir. 1997). In *Jones v. City of Dothan*, the officer "slammed" the plaintiff against a wall, kicked his legs apart causing pain to his arthritic knee, and made him raise his arms above his head causing pain from a prior stroke. 121 F.3d 1456, 1460–61 (11th Cir. 1997). In *Rodriguez v. Farrell*, the officer "grabbed" the plaintiff's arm, "twisted it behind his back, jerk[ed] it up high to the shoulder and then handcuffed [him] as [he] fell to his knees screaming that [the officer] was hurting him." 280 F.3d 1341, 1351–53 (11th Cir. 2002). In *Woodruff v. City of Trussville*, the officer punched the plaintiff in the face, forcefully removed him from his car, and slammed him on the ground. 434 F. App'x 852, 855 (11th Cir. 2011). And just two months ago, in *Charles v. Chambers*, the Court ruled that the "pushes, pulls, and shoves" that officers used to remove a pregnant plaintiff from her car, including "pushing her into her vehicle" and "wrenching her arm behind her back with some force," were *de minimis*, commenting, "[i]f excessive force did not occur in *Nolin* [or] *Rodriguez*, … it most certainly did not occur here." No. 23-11636, 2024 WL 4266842, at *4 (11th Cir. Sept. 23, 2024).

Of the *de minimis* force cases, *Baxter v. Roberts* is particularly instructive because the factual circumstances leading up to the use of force so closely mirror those at issue here. *See* 54 F.4th at 1268–69. Bodycam footage showed an officer initiating the arrest of the plaintiff after he verbally and then physically resisted his commands. The officer grabbed the plaintiff's arm, forced him to the ground, twisted his arm around and jerked it up, and placed him in handcuffs. The plaintiff suffered a chipped tooth and facial abrasions. To the Court, his excessive force claim "warrant[ed] only brief consideration because it was obvious that the officer used *de minimis* force. *Ibid*. "[U]nder our precedent," it reasoned, the "commonplace use of force in arresting Baxter — who was at that point physically resisting [the officer]'s instructions — was clearly *de minimis* force that was permissible under the Fourth Amendment." *Ibid*.

Here, the bodycam footage shows Rodriguez initiating Anderson's arrest after she verbally and physically resisted his commands. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1071–72 (11th Cir. 2008) (finding that plaintiff "resisted" commands when, after officers told him to sit, "[h]e did for a moment, but then he stood up again"). First, Rodriguez commanded her, "Get your bag. We gotta go. We gotta get out of here." Anderson didn't move. Instead, she asked how she was going to get home. Second, he commanded her, "Get your bag; let's go. Get your bag; let's go." Anderson again didn't move. Instead, she yelled out that she didn't have any other ticket. Third, he commanded, "Get your bag." Anderson didn't go to retrieve her bag. Instead, she talked about the checked bags on the flight she missed. Fourth, he commanded, "We gotta go. We gotta go." Anderson still didn't move. Alvarez added his own command

that Anderson get her bag, but she ignored that, too. Fifth, Rodriguez commanded, "So, get your bag. Let's go." That time, he took a step back so that Anderson could walk past him to get to her bag. Anderson continued to stand there. She then looked to the rebooking counter where the airline manager was standing and said, "I should punch him in his fucking face. Give y'all a reason to lock me up."

When Rodriguez commanded Anderson a sixth time, "You're not doing nothing. Get your bag," Anderson finally moved, but not to get her bag. She went from passively resisting his commands by doing nothing to actively resisting them by pointing at him, stepping toward him until she was yelling, without a mask, inches from his face, and shouting, "You acting like you white when you really black." When Rodriguez squared his stance, Anderson shouted, "Don't walk up me, for real. What you wanna do?" and got even closer to his face. Only at that final point—after she physically resisted his instructions by approaching him until she was so close that witnesses believe they made contact—did Rodriguez slap her once in the face with an open hand. The slap was a *de minimis* use of force because it was at least equivalent to, if not far less severe than, the force used in *Baxter* and the other cases.[25]

---

[25] Although it could be argued that Rodriguez could have acted or spoken differently in the moments right before the slap, the argument founders. A plaintiff "cannot avoid summary judgment" by arguing that "an officer's conduct leading up to a … confrontation was imprudent, inappropriate, or even reckless," that the officer used "bad tactics that result[ed] in [] a confrontation that could have been avoided," or that "the situation could better have been handled differently." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 615–16 (2015); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) ("Our task is not to evaluate what the officers could or should have done in hindsight."). It makes no difference what other actions Rodriguez could have been taken. What matters is whether his undisputed conduct was objectively reasonable—which it was.

2. The district court erroneously concluded that the slap violated Anderson's constitutional rights. It never fairly considered whether the *de minimis* force exception applied. It acknowledged that the defendants raised the argument, then discussed the *Graham* factors before concluding that they weighed in Anderson's favor. App. 1236–38. Because the "*de minimis* force exception survived *Graham*," *Croom*, 645 F.3d at 1252, the district court was wrong to sidestep the analysis of the exception.

*Croom* illustrates how the *de minimis* force exception truly is an exception to the *Graham* factors. There, the 63-year-old plaintiff was gardening outside her son's home in a one-piece bathing suit when police executed a search warrant for illegal substances. *Id.* at 1244–45. Officers ran up to the property and ordered her to get on the ground, which they were entitled to do in executing the warrant. *Id.* at 1251–52. The plaintiff told an officer, "I'm getting down as fast as I can. I've got arthritis. I can't get down on the ground." *Id.* at 1245. The officer continued to order her to get down and, when she couldn't comply, pushed her from a squatting position to the ground, placing a foot on her back and holding her down for ten minutes. *Ibid.* This Court expressed skepticism of whether that force "was truly necessary under the circumstances," but it could not "find a constitutional violation based on its usage" because, "[e]ven if unnecessary, the force used against Croom was *de minimis*." *Id.* at 1252.

Had the Court analyzed the *Graham* factors, it's reasonable to assume that none of them would have resolved in the officer's favor: The elderly woman watering plants in her bathing suit was not suspected of any crime, did not pose a threat to anyone's safety, and was not resisting arrest or attempting to evade arrest—in fact, she wasn't

under arrest. She nevertheless could not overcome qualified immunity because the *de minimis* force exception applied. It would be a daunting task for any court to find the force in *Croom* constitutionally acceptable but the force here excessive. So, instead of attempting to square the facts of the two cases, the district court never mentioned *Croom* or applied its reasoning.

This Court should rectify that mistake. Even if the district court harbored questions about whether Rodriguez's slap was necessary—and, for that matter, even if this Court harbors the same questions—the force he used was *de minimis* and thus reasonable under the Fourth Amendment.

3. That Anderson suffered minimal injury from the slap bolsters this conclusion. The Court has stressed that "the nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1325 (11th Cir. 2017) (cleaned up). And it has admonished that "a minimal amount of force *and injury* … will not defeat an officer's qualified immunity in an excessive force case." *Nolin*, 207 F.3d at 1258 (emphasis added).

Relying on that guidance, the Court often looks to the extent of a plaintiff's injury to inform its decision whether a certain use of force was *de minimis*. In *Nolin* itself, it held that "minor bruising which quickly disappeared without treatment" was the kind of "minimal … injury involved in a typical arrest." 207 F.3d at 1258 n.4. In *Gold*, the "minor nature" of the plaintiff's "skin abrasions" caused by twenty minutes of tight handcuffing "for which he did not seek medical treatment" reflected that "minimal

force was used to apply the handcuffs." 121 F.3d at 1446. In *Rodriguez*, the Court stated that "[p]ainful handcuffing, without more, is not excessive in cases where *the resulting injuries are minimal*," disregarding that the handcuffing aggravated the plaintiff's prior elbow surgery and resulted in amputation of his arm. 280 F.3d at 1351–53 (emphasis added). In *Jones*, it held that the force used was *de minimis* even though the plaintiff "received minor medical treatment for pain in his arthritic knee three days after the incident." 121 F.3d at 1460. In *Baxter*, it granted qualified immunity to the officer for his *de minimis* use of force despite the plaintiff's allegation that he suffered a chipped tooth and facial abrasions. 54 F.4th at 1269. And most recently, in *Johnson v. City of Atlanta*, the Court ruled that the officer's tackle was *de minimis* even though the plaintiff alleged that he suffered a dislocated shoulder and broken collarbone. 107 F.4th at 1303.[26]

The district court wrongly determined that Anderson suffered injury that would render the slap more than *de minimis*. It recounted that she "suffered swelling and redness to her face, vomited due to a panic attack, and ultimately visited the University

---

[26] *See also, e.g.*, *Shaw v. Calhoun State Prison*, No. 21-11223, 2022 WL 17333081, at *4 (11th Cir. Nov. 30, 2022) (ruling use of force *de minimis* in part because plaintiff's injuries "were limited to bruising"); *Pinto*, 2022 WL 2289171, at *7 (ruling use of force *de minimis* where plaintiff "suffered no serious physical injuries"); *Brown v. Bellinger*, 843 F. App'x 183, 187–88 (11th Cir. 2021) (ruling officer's use of force— manipulating and touching the plaintiff's penis and testicles for two minutes—*de minimis* because "no lasting physical injury occurred"); *cf. Pierre v. Padgett*, 808 F. App'x 838, 843–44 (11th Cir. 2020) (concluding in Eighth Amendment case that plaintiff's "physical injuries were no more than *de minimis*" because he "suffered only scrapes, scratches, and minor bruising or swelling," all of which "healed without the need for any medical treatment").

of Illinois-Chicago Hospital emergency room due to her injuries." App. 1237. For one thing, it's only "the nature and extent of *physical injuries*" that are relevant, *Stephens*, 852 F.3d at 1325 (cleaned up), and panic attacks are not physical injuries. *See, e.g.*, *Smith v. Campbell*, 295 F. App'x 314, 319 (11th Cir. 2008) (recounting plaintiff's allegation that she suffered "panic attacks," then observing that "[s]he has not alleged any physical injury"); *Pipino v. Delta Air Lines, Inc.*, 196 F. Supp. 3d 1306, 1318 (S.D. Fla. 2016) ("[P]anic attacks are not physical injuries; they are emotional disturbances. And while panic attacks may be manifested by physical symptoms, a physical *symptom* is not equivalent to a physical *injury*[.]" (cleaned up)). Anderson alleges redness and swelling to her face that resolved in two days. And while she *sought* medical treatment by visiting an emergency room the day after the incident, she did not actually *receive* treatment. She treated herself with "witch hazel, peroxide, and stuff like that." App. 215:1–7, 239:12–15, 241:6–13.

Anderson's injuries were far less severe than the injuries the plaintiffs suffered in this Court's earlier cases. What she describes should be considered minimal injury, shoring up the conclusion that Rodriguez's slap was a *de minimis* use of force.

**B.   Grabbing Anderson's hair was a *de minimis* use of force.**

In the district court's words, when Anderson "slowed down and asked the officers to return to the gate to retrieve the correct bag" and "continued to insist that Alvarez had the wrong luggage," Rodriguez "grabbed [her] hair forcefully enough to pull her head back, saying, 'Walk, walk, walk.'" App. 1247. Twelve seconds after grabbing it, he let it go. This force, too, was *de minimis*.

That some amount of force is used after a plaintiff has been handcuffed does not automatically render its use excessive. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993); *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002); *Alston v. Swarbrick*, 954 F.3d 1312 (11th Cir. 2020). In *Post*, an officer responding to a building code occupancy violation at a restaurant arrested the plaintiff for obstruction and resisting. 7 F.3d at 1555–56. During the arrest, he spun the plaintiff around, placed him against a display case, applied a chokehold, and handcuffed him. *Id.* at 1556. He then escorted him out of the building. *Ibid.* Outside, the plaintiff made a remark, and the officer replied, "Shut up, you're under the control of the hatchet man for the commissioner now." *Ibid.* When the plaintiff kept speaking, the officer pushed him against a wall. *Ibid.* The Court granted qualified immunity to the officer on the plaintiff's excessive force claim. *Id.* at 1559–60. It noted that once the plaintiff was handcuffed and taken outside, "no further force was needed." *Id.* at 1559. But, relying on earlier *de minimis* force cases, it held that "even though pushing [the plaintiff] against the wall might have been unnecessary, this pushing was not plainly unlawful." *Ibid.*

In *Vinyard*, the plaintiff alleged that when she arrived at the jail in the officer's patrol car following her arrest, the officer "dragged [her] inside 'either by her shirt, her arm or her hair.'" 311 F.3d at 1344. The Court concluded that the "force used and any injury sustained" at that time were "*de minimis* and not excessive." *Id.* at 1348 n.13; *see also* 1344, 1348 n.13 (holding that officer also used *de minimis* force before plaintiff's arrest when he told her to get up from her chair and, before she could rise, "grabbed her arm and jerked her out of her chair").

In *Alston*, an officer arrested the plaintiff for disorderly conduct and resisting and placed him in the back of a patrol car. 954 F.3d at 1316. Although the plaintiff was handcuffed behind his back, he retrieved his cell phone and called his aunt to tell her what was happening. *Ibid*. The officer forcefully removed the plaintiff from the vehicle to search him, pulled down his pants (revealing his genitalia), took a phone and car keys from him, and threw him back inside the vehicle. *Id*. at 1316–17. Following a heated verbal exchange, the officer, "[e]nraged, … jumped out of the vehicle, reached inside, and tried to pull [the plaintiff] out by jerking his arm." *Id*. at 1317.  The plaintiff "repeatedly screamed in pain and yelled that his foot was stuck under the seat," and the officer jerked harder. *Ibid*. The Court granted qualified immunity to the officer for this use of force. *Id*. at 1320. In sum, even though the plaintiff's hands were cuffed behind his back, even though he was restrained in the back of a patrol vehicle, and even though he "posed a minimal threat," the officer was constitutionally permitted to use force to "jerk" him out of the vehicle, over his screams of pain about his foot.

Read together, *Post*, *Vinyard*, and *Alston* should dispel any notion that Rodriguez's second use of force was excessive. In all three cases, force was used after the plaintiff was handcuffed. In all three cases, the force was at least arguably unnecessary. And in *Vinyard* in particular, the use of force involved dragging the plaintiff by her hair. Viewing the situation in Anderson's favor and assuming that no further force was necessary after she was handcuffed, it was still *de minimis*, and not plainly unlawful, for Rodriguez to grab her hair and turn her head forward to get her to continue walking. The force he used was equivalent to, or less than, the force used in those three cases.

Considering situations at the opposite end of the spectrum, where post-hand-cuffing uses of force were more than *de minimis*, underscores the minimal nature of Rodriguez's force. Returning to *Vinyard*, while the Court concluded that the officer used *de minimis* force in dragging the plaintiff from his patrol car, it held that he used excessive force when he stopped the car during the drive to the jail, got out, opened the back door, and pepper sprayed the plaintiff's face while she sat handcuffed behind her back with her feet on the floorboard. 311 F.3d at 1344, 1348–49. *Alston* similarly involved an additional use of force that the Court deemed more than *de minimis*: after the officer removed the plaintiff from the vehicle there was "a three-to-five minute period during which [he] continuously used pepper spray on his face while he lay on the ground helplessly." 954 F.3d at 1320. Invoking *Vinyard*, the Court ruled that "such a prolonged use of pepper spray on a non-resisting and handcuffed detainee" was excessive. *Ibid*. Other cases finding that an officer used more than *de minimis* force after handcuffing include *Lee v. Ferraro*, where the officer led the plaintiff to the back of her car and slammed her head against the trunk, 284 F.3d 1188, 1198–200 (11th Cir. 2002), and *Saunders v. Duke*, where an officer slammed the plaintiff's head against the pavement "with 'extreme force,' resulting in a number of significant injuries," 766 F.3d 1262, 1265 (11th Cir. 2014). The minor force Rodriguez used does not even begin to approach the severity of these uses of force that were not protected by qualified immunity.

Anderson did not suffer any physical injury from this force other than pain felt during the force itself. App. 1204. But pain alone is not enough. The plaintiffs in *Alston*,

*Rodriguez*, *Jones*, and *Gold* all screamed, yelled, or complained of pain during the respective uses of force; nevertheless, the force in each was ruled *de minimis*. *See Alston*, 954 F.3d at 1317; *Rodriguez*, 280 F.3d at 1351–53; *Jones*, 121 F.3d at 1460–61; *Gold*, 121 F.3d at 1444, 1446–47. Rodriguez's second use of force, like the first, was *de minimis* and therefore reasonable under the Fourth Amendment.

⁎⁎

The Court should conclude that Rodriguez is entitled to qualified immunity from Anderson's excessive force claim. And, if it does, it should conclude that Miami-Dade County is entitled to summary judgment from her state-law battery claim.

## II. Rodriguez's undisputed conduct was not clearly established as a violation of the Fourth Amendment.

Even if the Court agrees with the district court that both uses of force were constitutionally unreasonable, Rodriguez remains entitled to qualified immunity. The law was not clearly established at the time that his conduct would violate the Constitution.

A "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). In this Circuit, a plaintiff can satisfy her burden on this second prong of the qualified immunity analysis in one of three ways: (1) "come forward with 'case law with indistinguishable facts clearly establishing the constitutional right'"; (2) "point to 'a broad statement of principle within the Constitution, statute,

or case law that clearly establishes a constitutional right'"; or (3) "show that the officials engaged in 'conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Jarrard v. Sheriff of Polk Cty.*, 115 F.4th 1306, 1323–24 (11th Cir. 2024) (quoting *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021)). "In all three methods, the salient question is whether the state of the law at the time of the incident gave the [official] fair warning that his conduct was unlawful." *Powell*, 25 F.4th at 920 (cleaned up). That said, "[n]otwithstanding the availability of these three independent showings," the Court has emphasized "on several occasions that 'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (quoting *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)).

Anderson sought to meet her burden on this prong through the first two methods, while the district court relied only on the second to deny qualified immunity. This Court should find that they failed to sufficiently do so.

### A. Anderson cited no case law with indistinguishable facts finding that similar conduct violated the Constitution.

Under the first method, a plaintiff "must point to a case, in existence at the time of the incident, in which the Supreme Court or this Court found a violation based on materially similar facts." *Baxter*, 54 F.4th at 1263 (cleaned up). Factual similarity is crucial "in the Fourth Amendment context, where the [Supreme] Court has recognized it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."

*Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (cleaned up). "Use of excessive force is an area of the law in which the result very much depends on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the facts at issue." *Ibid.* (cleaned up). For Anderson to overcome Rodriguez's assertion of qualified immunity, the state of the law must have "ma[de] it obvious" that his conduct violated her rights "in the specific set of circumstances." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (cleaned up). The cases she cites do not get her over that line.

Below, Anderson mentioned the facts of just four cases: *Quinette v. Reed*, 805 F. App'x 696 (11th Cir. 2020), *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), *Saunders*, and *Vinyard*. *See* App. 1206–07. The Court can dispatch with the unpublished *Quinette* right off the bat because "unpublished cases do not serve as binding precedent and cannot be relied upon to define clearly established law." *Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021).

Neither *Hadley* nor *Saunders* could have defined clearly established law because the facts are not materially similar. In *Hadley*, the Court found that the officer used excessive force by punching the plaintiff in the stomach while he was handcuffed and not struggling or resisting. 526 F.3d at 1330. In *Saunders*, after the plaintiff was handcuffed, officers held him down against hot pavement on his stomach for a "long period of time" even though he was "not resisting, posing a threat, or attempting to flee." 766 F.3d at 1265. When he held his face up off the pavement to keep it from being burned, an officer "'slammed' [his] face onto the pavement 'with extreme force.'" *Ibid.* These

decisions do not involve force administered *prior* to handcuffing, so they could not have clearly established that the slap administered before handcuffing Anderson was unconstitutional; Rodriguez would not have known after reading either case that slapping the unrestrained Anderson one time was against the law. *See Baxter*, 54 F.4th at 1263 ("The key question … is whether the officer would know after reading prior case A that what he was doing in instant case B was against the law."). This is especially true in light of the wealth of decisions ruling that single slaps or strikes were *de minimis* uses of force.[27] When prior authority "would not only fail to put [an officer] on notice"

---

[27] *See, e.g.*, *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (holding that force used was *de minimis* where officer hit plaintiff " '[i]n the back of the neck' with the side of his hand, performing 'a karate chop kind of deal' "); *Purcell v. City of Fort Lauderdale*, — F. Supp. 3d —, 2024 WL 4489527, at *15 n.15 (S.D. Fla. Oct. 15, 2024) (relying on *Nolin*, *Jones*, and *Woodruff* to conclude that "the degree of force each Officer deployed … (*viz.*, one open palm push and *a punch to the head*) was appropriate given the circumstances" (emphasis added)); *Harding v. Gould*, No. 22-6285, 2024 WL 3742688, at *6 (S.D.N.Y. Aug. 9, 2024) ("courts have repeatedly held that similarly minimal uses of force, such as a single slap, that result in no injury 'constitutes unactionable, *de minimis* force' " (quoting *Lewis v. Huebner*, No. 17-2101, 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020))); *Mendoza v. Dixon*, No. 20-0214, 2021 WL 6494945, at *7 (N.D. Fla. Dec. 7, 2021) ("federal courts 'have routinely held that a single push, shove, punch, or blow … simply does not rise to constitutional dimensions' " (quoting *Neal v. Miller*, 778 F. Supp. 378, 382 (W.D. Mich. 1991))), *adopted sub nom. Mendoza v. Inch*, 2022 WL 124165 (N.D. Fla. Jan. 13, 2022); *Hall v. Billups*, No. 14-0196, 2017 WL 9471783, at *3 (M.D. Ala. Feb. 28, 2017) (finding *de minimis* force where officer "administered a branchial stun slap to the left side of [the plaintiff]'s neck"; plaintiff "admit[ted] that he was very upset, angry and did not obey [officer's] instructions to be quiet," and court found that plaintiff was moving toward officer when she slapped him), *adopted*, 2017 WL 1170859 (M.D. Ala. Mar. 29, 2017); *Santiago v. City of Yonkers*, No. 13-1077, 2015 WL 6914799, at *8 (S.D.N.Y. Oct. 30, 2015) (explaining that "an open-handed slap … with no medical evidence and no other evidentiary support of injury, does

that his conduct violated the plaintiff's Fourth Amendment rights, "it could reasonably lead him to the opposite view," qualified immunity is warranted. *Merricks v. Adkisson*, 785 F.3d 553, 564 (11th Cir. 2015).

What's more, *Hadley* and *Saunders* wouldn't have informed Rodriguez that his second use of force was clearly established as a violation because their facts are not "indistinguishable." *Jarrard*, 115 F.4th at 1323. He did not punch Anderson or "slam" her head, and whereas the Court accepted the respective plaintiffs' versions of the facts that they were not struggling or resisting, the bodycam video here shows Anderson slowing down while being escorted, turning her head, shouting at Alvarez, and moving her arm inside Rodriguez's grip.

The portion of *Vinyard* dealing with the officer's constitutional violation doesn't help Anderson's plight, as the facts there are not indistinguishable, either. Rodriguez did not pepper spray a handcuffed Anderson in the face. Setting that aside, he demonstrated earlier how the facts of *Vinyard* could lead him to believe that his post-handcuffing use of force was lawful, given that the Court granted qualified immunity on

---

not rise to the level of a constitutional violation"); *Shelby v. Enlers*, No. 09-0221, 2010 WL 4536777, at *1 (S.D. Miss. Sept. 24, 2010) ("force used was *de minimis* and there was very little, if any, injury" where defendant slapped plaintiff on his ears and plaintiff was diagnosed with inflammation of the external ear canal and prescribed ibuprofen for neck pain), *aff'd*, 429 F. App'x 392 (5th Cir. 2011); *Anthony v. Schackmann*, No. 07-0698, 2009 WL 1065071, at *1–2 (D. Or. Apr. 17, 2009) (*de minimis* force where defendant slapped plaintiff's head with her open hand), *aff'd*, 402 F. App'x 207, 208 (9th Cir. 2010) ("unprovoked, single slap constituted only *de minimis* force"). Non-binding persuasive authority like these cases here "*can* be used to indicate that a particular constitutional right is *not* clearly established." *Corbitt*, 929 F.3d at 1319 n.14 (emphasis added).

the claim that the officer dragged the plaintiff out of his patrol car by her shirt, her arm, *or her hair*. 311 F.3d at 1344, 1348 n.13. The facts of *Post*, 7 F.3d at 1559–60, and *Alston*, 954 F.3d at 1316–17, both of which involved *de minimis* force applied post-handcuffing, likewise could have led Rodriguez to believe that his second use of force was constitutionally permissible. *See Merricks*, 785 F.3d at 564.

At bottom, Anderson's selected case law doesn't satisfy the first method of demonstrating clearly established law because she identifies no precedent holding that an officer violated the Constitution under materially similar facts.

## B. Neither Anderson nor the district court demonstrated how the general principles of law they relied on apply to the specific context of this case.

Cases applying the second method, together with those applying the third, are "known as 'obvious clarity' cases." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020). Obvious clarity is a "narrow exception," and "[c]ases that fall under this narrow exception are rare and don't arise often." *Ibid.* (cleaned up). Considering that rarity, "if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." *Ibid.*

Under the second method, "the plaintiff must rely on decisional law." *Powell*, 25 F.4th at 920 (cleaned up). And she must show how the principle she drew from that law would apply with obvious clarity to the circumstances. *Bradley v. Benton*, 10 F.4th 1232, 1242 (11th Cir. 2021); *see also Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir.

2010) ("[I]t must be obvious that the general rule applies to the specific situation in question.").

None of the statements the district court or Anderson relied on justify denying qualified immunity. They are all variations on the same theme:

> "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." App. 1239 (quoting *Patel v. City of Madison*, 959 F.3d 1330, 1343 (11th Cir. 2020)); *see also* App. 1206 (quoting *Patel*, 959 F.3d at 1343).

> "the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing." App. 1239 (quoting *Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022)).

> "a police officer is prohibited from using force against a non-resisting suspect." App. 1206 (quoting *Montefu Acosta v. Miami-Dade County*, 97 F.4th 1233, 1241 (11th Cir. 2024)).

> "a police officer violates the Fourth Amendment if he uses gratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers." App. 1239 (quoting *Senko v. Jackson*, 603 F. Supp. 3d 1299, 1313 (S.D. Fla. 2022)).[28]

None of them "squarely govern[]" the facts of this case. *Kisela*, 584 U.S. at 104. The principles Anderson and the district court drew from those cases would not apply with obvious clarity to these circumstances because it cannot be justifiably argued that "every objectively reasonable government official facing the circumstances would know that [Rodriguez]'s conduct did violate federal law when [he] acted." *Bradley*, 10 F.4th at 1242 (cleaned up).[29]

---

[28] Notably, *Senko* is a district court case, and "district court decisions … can't clearly establish the law." *Crocker*, 995 F.3d at 1241 n.6.

[29] The district court's parenthetical citation to *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998), is puzzling. It states that the case "h[eld] that where plaintiffs

The Supreme Court instructs lower courts "to ask 'whether the violative nature of *particular* conduct is clearly established'"—a question that must be answered "'in the light of the specific context of the case, not as a broad general proposition.'" *Crocker*, 995 F.3d at 1232 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), then *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). A statement that an officer cannot use "gratuitous and excessive force" against a suspect who is "under control, not resisting, and obeying commands" or who is "secure" or who is "not a safety threat" would not put every objectively reasonable officer on notice that using a single slap to subdue a plaintiff who ignored several lawful commands and approached the officer within inches of his face while saying "Don't walk up on me, for real. What you wanna do?"—and then moving even closer—would violate the Fourth Amendment. Nor would it have put every objectively reasonable officer on notice that it would violate the Fourth Amendment to grab an arrestee's hair and turn her head forward after she slowed down while she was being escorted and turning her head to yell out questions. *Ussery v. Houston County*, No. 24-0116, 2024 WL 4424794, at *9 (M.D. Ga. Oct. 4, 2024) (noting that at the time officer used force, although plaintiff was

---

were not suspected of committing a serious crime, did not pose an immediate threat to anyone, and were not actively resisting arrest 'the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive.'" App. 1239–40. The court did not cite any purportedly applicable principle here, so if the citation was part of an endeavor to use the first method of demonstrating clearly established law, it comes up short. *Thornton* is inapplicable because the officers there were engaged in an unlawful arrest of the plaintiff, so they were not permitted to use any force at all. 132 F.3d at 1400. Anderson, it bears repeating, has never challenged the lawfulness of her arrest.

handcuffed, officer was still walking plaintiff to patrol vehicle and plaintiff was turning towards officer, so plaintiff "was not 'completely secured,' nor was any potential danger 'vitiated'"). The violative nature of Rodriguez's particular conduct in this context is not clearly established by these general statements of the law.

Anderson's and the district court's broad statements are not specific enough to give a reasonable officer "fair and clear warning" in these circumstances whether a use of force is excessive or not excessive, gratuitous or not gratuitous, or whether a plaintiff is under control versus not under control, resisting versus not resisting, obeying versus disobeying, secure versus not secure, or a threat versus not a threat. *Kisela*, 584 U.S. at 104–05 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Without that fair warning, these general principles run afoul of the Supreme Court's admonition not to "define[] the qualified immunity at a high level of generality … and then fail[] to consider that question in 'the specific context of the case.'" *Mullenix*, 577 U.S. at 12 (quoting *Brosseau*, 543 U.S. at 198).

This Court cannot allow Anderson or the district court to avoid "the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 572 U.S. at 779. As they have failed to adequately answer that question, Rodriguez is entitled to qualified immunity.

## CONCLUSION

Even if the Court believed that either of Rodriguez's uses of force were unnecessary under the circumstances, under its precedent, they were not unlawful. The *de minimis* uses of force were reasonable and did not violate any clearly established constitutional right. The order denying the motion for summary judgment should be reversed.

Dated: November 20, 2024.

Respectfully submitted,

RHEA P. GROSSMAN, P.A.

GERALDINE BONZON KEENAN
MIAMI-DADE COUNTY ATTORNEY

By: */s/ Rhea P. Grossman*
    Rhea P. Grossman
    Fla. Bar No. 92640
    2650 W. State Road 84, Ste. 102
    Fort Lauderdale, Florida 3312
    (954) 587-8488
    rheagrossman@comcast.net

By: */s/ Zach Vosseler*
    Zach Vosseler
    Assistant County Attorney
    Fla. Bar No. 1008856
    111 N.W. 1st Street, Suite 2810
    Miami, Florida 33128
    (305) 375-5151
    zach@miamidade.gov

*Counsel for Anthony Rodriguez*

*Counsel for Miami-Dade County*

# CERTIFICATES

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 10,179 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word in size 14 Equity font.

3.    On November 20, 2024, at approximately 11:45 p.m., I electronically filed this brief with the Court of Appeals and served a copy on all counsel of record via ECF. Because the final Federal Express pickup that day had already taken place, I served a hard copy of the brief on all counsel of record and four hard copies of the brief on the Court of Appeals via Federal Express the following day.

/s/ Zach Vosseler
Zach Vosseler
Assistant County Attorney