# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

CASE NO.: 24-12954
_____


PARIS ANDERSON,

*Plaintiff-Appellee,*

v.

ANTHONY RODRIGUEZ and MIAMI-DADE COUNTY,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA, CASE NO. 21-CV-24438-KMW
_____

## PLAINTIFF-APPELLEE'S
## ANSWER BRIEF

Andrew B. Greenlee, Esq.
ANDREW B. GREENLEE, P.A.
Florida Bar No. 96365
401 E. 1st St.
Unit 261
Sanford, Florida 32772
407.808.6411
andrew@andrewgreenleelaw.com
*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT
*Anderson v. Rodriguez et al*, Case No. 24-12954

Pursuant to Rule 26.1 of the Federal Rules Appellate Procedure and Rule 26.1-2 of the Eleventh Circuit Rules, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case:

1. Anderson, Paris (Plaintiff-Appellee);

2. Andrew B. Greenlee, P.A. (Counsel for Plaintiff-Appellee on appeal);

3. Blake, Stanford, (Mediator);

4. Bonzon Keenan, Geraldine (Miami-Dade County Attorney);

5. Greenlee, Andrew B. (Counsel for Plaintiff-Appellee on appeal);

6. Grossman, Rhea (Counsel for Defendant-Appellant Anthony Rodriguez);

7. Hale & Monico, LLC (Counsel for Plaintiff-Appellee);

8. Louis, Hon. Lauren Fleischer (United States Magistrate Judge);

9. Marx, Jason (Counsel for Plaintiff-Appellee);

10. Miami-Dade County (Defendant-Appellant);

11. Miami-Dade County Attorney's Office (Counsel for Defendant-Appellant Miami-Dade County);

12. Rhea P. Grossman, P.A. (Counsel for Defendant-Appellant Anthony Rodriguez);

13. Rodriguez, Anthony (Defendant-Appellant);

14. Sherris Legal, P.A. (Counsel for Plaintiff-Appellee);

15. Sherris, Mary (Counsel for Plaintiff-Appellee);

16. Vosseler, Zach (Counsel for Defendant-Appellant Miami-Dade County);

17. Williams, Hon. Kathleen M. (United States District Judge).

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 26.1-3</u>

I hereby certify that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

<u>*/s/Andrew B. Greenlee*</u>
Andrew B. Greenlee, Esquire
*Counsel for Plaintiff-Appellee*

## **STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellee Paris Anderson believes oral argument would substantially assist the Court in reaching a just resolution and therefore requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .................................................i

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF JURISDICTION...............................................................1

STATEMENT OF THE CASE AND FACTS .........................................................4

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT ....................................................................................................15

I.   THIS COURT LACKS JURISDICTION BECAUSE THE APPEAL
     CHALLENGES THE EVIDENTIARY SUFFICIENCY OF THE
     EXCESSIVE FORCE CLAIM ...................................................................15

     A. Standard of Review ...........................................................................15

     B. Argument on the Merits........................................................................15

II.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT
     GENUINE DISPUTES OF MATERIAL FACT PRECLUDED
     SUMMARY JUDGMENT......................................................................19

     A. Standard of Review ............................................................................19

     B. Argument on the Merits........................................................................19

CONCLUSION ..................................................................................................23

CERTIFICATE OF SERVICE ...........................................................................24

CERTIFICATE OF COMPLIANCE....................................................................24

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................1

*Behrens v. Pelletier*,
    516 U.S. 299 (1996)............................................................................................1

*Cavalieri v. Avior Airlines C.A.*,
    25 F.4th 843 (11th Cir. 2022) ..........................................................................15

*Chambliss v. Brevard Cty. Sheriff's Office*,
    No. 23-12867, 2024 U.S. App. LEXIS 13630 (11th Cir. June 5, 2024) ..........1, 3

*Charles v. Johnson*,
    18 F.4th 686 (11th Cir. 2021) ..........................................................................20

*Edwards v. Oliver*,
    31 F.4th 925 (5th Cir. 2022) ..............................................................................1

*English v. City of Gainesville*,
    75 F. 4th 1151 (11th Cir. 2023) ..................................................................15, 18

*Hadley v. Gutierrez*,
    526 F.3d 1324 (11th Cir. 2008) .......................................................................19

*Johnson v. Jones*,
    515 U.S. 304 (1995)........................................................................................4, 5

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)............................................................................................1

*Patel v. City of Madison*,
    959 F.3d 1330 (11th Cir. 2020) ..................................................................*passim*

*Nelson v. Tompkins*,
    89 F.4th 1289 (11th Cir. 2024) ................................................................1, 2, 19

*Reyes v. City of Richmond*,
  287 F.3d 346 (5th Cir. 2002)) ...............................................................................1

*Richmond v. Badia*,
  47 F.4th 1172 (11th Cir. 2022) ..................................................................20, 21

*Saunders v. Duke*,
  766 F.3d 1262 (11th Cir. 2014) ........................................................................20

*Stephens v. DeGiovanni*,
  852 F.3d 1298 (11th Cir. 2017) ..........................................................19, 20, 21

## Other Authority

28 U.S.C. § 1331 ....................................................................................................1

42 U.S.C. § 1983 ...........................................................................................1, 9, 20

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this civil rights action, which was brought under 42 U.S.C. § 1983. (Doc. 1 at 1); 28 U.S.C. § 1331. Appellees filed an interlocutory appeal from the Order granting in part and denying in part their joint motion for summary judgment. (Doc. 84; Doc. 85).

The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine "to the extent that it turns on an issue of law." *Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). However, the Court lacks jurisdiction "where the only issues appealed are 'evidentiary sufficiency' issues—that is, fact-related disputes about 'whether the evidence could support a finding that particular conduct occurred.'" *Nelson v. Tompkins*, 89 F.4th 1289, 1295 (11th Cir. 2024) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

Federal appellate courts have dismissed appeals for lack of jurisdiction where an appellant gives "lip service to the correct legal standard" but then "assumes fact different from those assumed" in the court below. *Edwards v. Oliver*, 31 F.4th 925, 930 (5th Cir. 2022) (quoting *Reyes v. City of Richmond*, 287 F.3d 346, 350 (5th Cir. 2002)); *see also Chambliss v. Brevard Cty. Sheriff's Office*, No. 23-12867, 2024 U.S. App. LEXIS 13630, at *1 (11th Cir. June 5, 2024).

Appellants here pay lip service to the correct standard on appeal, only to draw inferences *against* Ms. Anderson and assume different facts from those assumed by the district court. Take, for instance, the injuries she sustained. The district court, crediting her account, wrote "Anderson sustained face swelling and redness, a panic attack, vomiting, emotional distress, and ultimately visited the emergency room at the University of Illinois-Chicago Hospital the next day." (Doc. 84 at 6).

Appellants, in contrast, claim the "only physical injury Anderson suffered was swelling and redness to her face" and dispute she ever received treatment at the hospital. Initial Br. at 6. Similarly, Appellants characterize the violent blow to her face as "de minimis" force needed to "neutralize" her, *id.* at 5, 8-12, even though the district court found the video, viewed in the light most favorable to Ms. Anderson, showed she remained compliant, "did not pose a threat to any officers" or take any other action that could justify the gratuitous force used. (Doc. 84 at 11).

Appellants' first argument turns on "fact-related disputes" about "whether the evidence could support a finding" that the level force Rodriguez employed was excessive, *Nelson*, 89 F.4th at 1295, or whether, as Appellants claim, "the amount of force he used was reasonable." Initial Br. at 13, 14-25. The district court found that "a genuine dispute of material fact exists as to whether Rodriguez acted unconstitutionally," and the Court lacks jurisdiction to review that decision. *See*

*Chambliss*, at *13-14 (appeal dismissed where district court found dispute of fact as to whether force was "de minimis" or "substantial").

Their second argument, likewise, depends on the Court accepting their skewed view of disputed facts. Appellants devote considerable space to renewing their contention that the force and injuries were "de minimis," *see* Initial Br. at 27-29, but the district court concluded that disputes of fact foreclosed this argument, (Doc. 84 at 12), which renders it unreviewable in this posture. *Chambliss*, at *13-14.

Finally, Appellants do not quibble with the broad Constitutional principle identified by the district court—"a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands," *Patel v. City of Madison*, 959 F.3d 1330, 1343 (11th Cir. 2020)—but they claim this principle does not "squarely govern the facts of this case." Initial Br. at 32. Accepting this argument requires the adoption of their skewed version of the facts, and not the version of the facts adopted by the district court, which viewed the evidence and inferences derived from it in the light most favorable to Ms. Anderson. *See Chambliss*, at *15 (courts lack jurisdiction to review factual inferences drawn by the district court).

Given the factual disputes and the failure to present the facts in a manner consonant with the applicable standard of review, the Court should dismiss this appeal for lack of jurisdiction.

## STATEMENT OF THE CASE AND FACTS

This appeal arises from the use of excessive force on Ms. Anderson at Miami International Airport after she missed her flight back home to Chicago. Ms. Anderson had arrived at the airport some thirteen hours in advance of her flight, so she went to TGI Fridays in the terminal to pass time. (Doc. 78 at 1; Doc. 80 at 1). She ate two plates of food and consumed four alcoholic beverages during that time. *Id.*

After learning she missed her flight, Ms. Anderson became "unruly," which led the manager to call the Miami-Dade Airport District police. (Doc. 78 at 2; Doc. 80 at 2). Appellant Anthony Rodriguez ("Rodriguez"), along with two other officers ("Alvarez" and "Vega"), arrived at the gate, where the manager said no harm had been done, but advised that Ms. Anderson was out of control and was being disrespectful. *Id.*

While Alvarez took her aside, another staff member informed Rodriguez that Ms. Anderson had been drinking. (Doc. 78 at 3; Doc. 80 at 2). Body camera footage shows that she immediately complied when asked to step aside to speak with him. (Doc. 75, Alvarez BWC at 1:07–:12). When asked what happened, Ms. Anderson explained that she had asked an airline employee if she could use the bathroom and was told she could. *Id*. at 1:36–40. However, upon her return from the bathroom, her flight had departed. *Id*. at 1:36–40.

Ms. Anderson emphasized that she had a family member who just passed away, that she was now all alone in Miami, and that "Chicago is home." *Id*. at 1:12; 1:43–1:53. She also explained that one of her bags was already on the departed flight. *Id*. at 4:44–46. Though emotional and reduced to tears, Ms. Anderson maintained her distance from Alvarez as they spoke and was never violent. *Id*. at 1:07–4:18.

Alvarez asked her if she had any other bags, and she responded, "over there" gesturing toward the ticket counter. *Id*. at 4:49–:50. He asked her to "grab it" so they could leave. *Id*. at 4:51–:53. Ms. Anderson, apparently still confused as to her status, asked where they were going. *Id*. at 4:52–:54. When the officers informed her that she would need to seek a refund for her flight online, Anderson paused and then said, referring to the gate agent, "This don't make no sense. I should punch him in his f---ing face. Give y'all a reason to lock me up." *Id*. at 5:00–:20.

Rodriguez immediately responded, goading her to "go punch him" while nodding his head in the direction of the gate staff. *Id*. at 5:20–:24. This exchange was repeated a number of times, with Rodriguez gesturing toward the gate staff, saying "go, go punch him" while Ms. Anderson said, "I really should." *Id*. The district court found "Rodriguez said variations of . . . 'go, go punch him' seven or eight times." (Doc. 84 at 3; citing *id*.)

Ms. Anderson reacted to this provocation by taking took two steps toward Rodriguez and telling him, "You acting like you white when you really black." (Doc.

75, Vega BWC at 2:03–:09). Rodriguez then took a step and a half toward Ms. Anderson, saying, "What you wanna do?" *Id.* This final step brought them face-to-face. *Id.* Rodriguez then wound up and violently struck Ms. Anderson across her face with an open hand. (Doc. 75, Alvarez BWC at 5:31; Vega BWC at 2:10). The force of the blow knocked her back and caused her head to swivel around, as depicted in still shot below:



(Doc. 75, Vega BWC at 2:10).

After striking her, Rodriguez grabbed Ms. Anderson by her sweatshirt and took her to the ground with assistance from Alvarez and Vega. *Id.* at 2:11–:16. Ms. Anderson did not resist as the officers turned her on her stomach and handcuffed her. *Id.* at 2:10–:25. While placing the handcuffs on her, Rodriguez falsely[1] accused her of headbutting him, which she denied before he told her, "Shut the f--- up. Shut up." *Id.* at 2:19–:23. It took only fifteen seconds for the officers to handcuff Ms. Anderson with her hands behind her back. *Id.* at 2:10–:25.

While getting her to her feet, Rodriguez pulled Ms. Anderson by her hair and continued to grip her by her hair while leading her through the terminal. *Id.* at 3:18–:26. Rodriguez testified at his deposition that he grabbed her hair for approximately two to three minutes as he escorted her through the airport. (Doc. 76-7, at 86). At one point, Ms. Anderson asked Rodriguez, "Can you let my hair go? Can you stop grabbing me by my hair, sir? Please? Can you let my hair go?" (Doc. 75, Vega BWC at 3:18–:26). She continued to plead with Rodriguez to let her hair go for nearly a minute more, all while remaining compliant and continuing to walk in the direction he guided her. *Id.* at 3:26–4:27.

At one point, Ms. Anderson expressed shock that Rodriguez had just "smacked" her in the "face," which prompted him to again repeated the falsehood that

---

[1] The district court found that "no interpretation of the video footage allows for the conclusion that Anderson headbutted Rodriguez" and observed that Appellants did not "make this allegation in their briefing." (Doc. 84 at 5 n.3).

she had "headbutted" him. *Id.* at 5:20–:24. Ms. Anderson later noticed the luggage in Alvarez's hand was not hers and informed the officers of this. (Doc. 75, Rodriguez BWC 2 at 00:20–:28). They ignored her. *Id.*

Ms. Anderson slowed down and asked them to return to the gate to retrieve the correct bag, which had her phone and identification in it. *Id.* The officers again ignored her. *Id.* 0:30–:48. She told them several more times they had the wrong luggage and that her identification had been left behind at the gate. *Id.* In response, Rodriguez grabbed a fistful of Ms. Anderson's hair and yanked it forcefully, causing her head to jerk back and to the side. *Id.* at 0:36–:48. Though he instructed her, "walk, walk, walk," *id.* at 0:38, the district court noted "that at no point had Anderson stopped walking." (Doc. 84 at 5 n.4).

Rodriguez's hair-pulling caused her to double over and cry out in pain, and she asked him "Why you got me by my hair?" (Doc. 75, Rodriguez BWC 2 at 00:37–:43). Rodriguez replied, "Is you walking?" *Id.* As they continued through the terminal, Ms. Anderson repeatedly told the law enforcement officers they had the incorrect luggage. *Id.* at 0:48–2:30. Rodriguez finally acknowledged that her phone and identification had likely been left behind at the gate. *Id.* 2:30–:50.

When they reached the patrol car, Rodriguez informed her for the first time that she was under arrest. *Id.* at 5:30. Anderson immediately asked, "For what?" *Id.* at 5:26–:32. Rodriguez said, "For disorderly conduct and headbutting me." *Id.* Over the

police radio, Rodriguez said he used force, attempting to justify his actions by claiming she "headbutted" and "pushed" him. *Id*. at 6:19–:30. As a result of the incident, Anderson sustained face swelling and redness, a panic attack, vomiting, emotional distress, and ultimately visited the emergency room at the University of Illinois-Chicago Hospital the next day. (Doc. 80 at 8). Though Ms. Anderson was initially arrested for battery on a law enforcement officer and disorderly conduct, law enforcement took no action on those charges. (Doc. 84 at 9).

Ms. Anderson sued Rodriguez and Miami-Dade County under 42 U.S.C. § 1983. (Doc. 41). Her excessive force claim against Rodriguez rested on two actions: (1) the open-handed strike to her face; and (2) his pulling her hair as he escorted her out of the terminal. (Doc. 41 at 31; Doc. 81 at 4-9). Ms. Anderson also sued Miami-Dade County for battery, for negligent failure to train under Florida law, and for municipal liability under 42 U.S.C. § 1983. (Doc. 41 at 32-34).

The County and Rodriguez jointly moved for summary judgment. (Doc. 79). They argued that Rodriguez's use of force and Ms. Anderson's injuries were "de minimis," and that his use of force was reasonable under the circumstances. *Id.* at 4. They also argued that Rodriguez was entitled to qualified immunity, regardless of whether his conduct violated the constitution. *Id.*

Ms. Anderson, in her response in opposition to summary judgment, agreed that Miami-Dade County was entitled to summary judgment on her municipal liability and

negligent training claims. (Doc. 81 at 2). She maintained, however, that her excessive force claim against Rodriguez and her battery claim against Miami-Dade should be decided by a jury. *Id.*

Ms. Anderson identified numerous disputes of fact, including: (1) the degree of injuries she sustained, which she argued were not "de minimis"; (2) whether Ms. Anderson ever touched Rodriguez; and (3) whether she had committed any crime prior to being struck in the face. *Id.* at 4-5. She also disputed the notion that she attempted to "wrest her arm away" from Vega or Rodriguez while they were escorting her, or that she did any other act that would justify him grabbing by her hair for two to three minutes, including the jarring twelve seconds of hair-yanking captured on video and described above. *Id.* at 5.

The district court denied the motion as to the excessive force claim against Rodriguez as well as the battery claim against the County. (Doc. 84 at 8-16). Applying the standard articulated in *Graham v. Connor*, 490 U.S. 386, 396 (1989), it found that the minor severity of the charged offenses, which were ultimately unsustainable, weighed against the defendants. *Id.* at 9.

The district court recognized Appellants' attempt to re-frame the purported crime committed by Ms. Anderson as "obstruction of justice" under section 843.02, Florida Statutes, as opposed to the offenses initially lodged against her. *Id.* at 9.

"Without opining on the merit of this contention," the district court found that, even if she had committed that crime, its relative severity weighed against Appellants. *Id.*

The district court observed that, prior to being struck in the face, Ms. Anderson was "at no point violent." *Id.* at 10. It also pointed out that a violation of that statute requires that the "individual act '*without* offering or doing violence to the person of the officer.'" *Id.* at 10 (quoting Fla. Stat. § 843.02) (emphasis in original). Hence, it concluded the crime was by its very nature non-violent. *Id.* at 10.

With respect to the final factor under *Graham*, the district court opined as follows:

> Leading up to the strike to the face, none of the officers told Anderson that she was under arrest and Anderson maintains that she was not resisting arrest. Furthermore, while she did not immediately comply with the officers' instructions to leave the gate area, at no point did Anderson say she would not leave or obey the officers. Instead, Anderson answered every question posed by the officers, pointed out her luggage, and asked her own clarifying questions as she tried to make sense of the situation. Viewing the facts in the light most favorable to Anderson, the Court finds that Anderson did not pose a threat to any of the officers, nor was she resisting arrest or evading arrest by flight.

*Id.* at 11.

The district court found that Rodriguez's hair pulling had even less justification. *Id.* It noted that Ms. Anderson was compliant and handcuffed with her hands behind her back at the time Rodriguez pulled her hair. *Id.* She was so compliant, in fact, that "Rodriguez at various points held on to her with only a single hand." *Id.* It also observed that Ms. Anderson "continued walking in the direction the officers directed

her and only slowed down briefly—prior to the hair pull—to inform the officers that they had left her identification behind." *Id.* Ms. Anderson was "at no point violent" and did not pose an immediate threat to the safety of the officers or others. *Id.* Thus, the district court concluded a "reasonable jury could find that these facts, taken together, demonstrate that Anderson was not a threat and was not resisting arrest at the time Rodriguez pulled her hair." *Id.*

The district court also rejected the notion that the force used or resulting injuries were de minimis. *Id.* at 11-13. In the view of the lower court, there was a genuine dispute of material fact as to whether there was *any* need for the application of force when Rodriguez struck Ms. Anderson. *Id.* at 12. Even if the situation necessitated the use of force, the district court found it "unclear that the amount of force Rodriguez used when he struck her was proportionate with that need." With respect to the hair-pulling, the court found there was "certainly no need for any application of force when Anderson was already handcuffed and being escorted out of the terminal," particularly since she was in no way disobeying or posing a risk to the officers. *Id.*

The lower court dismissed any suggestion that Ms. Anderson "suffered practically no injury" as "inaccurate," as she "suffered swelling and redness to her face, vomited due to a panic attack, and ultimately visited the University of Illinois-Chicago Hospital emergency room due to her injuries." *Id.* Thus, it found a jury

could reasonably find that the amount of force utilized by Rodriguez in both situations was excessive. *Id.*

The district court denied Rodriguez qualified immunity with respect to the open-handed strike on the authority of *Patel v. City of Madison*, 959 F.3d 1330, 1343 (11th Cir. 2020), where this Court ruled that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Id.* at 14. It also pointed to another decision, in which this Court "explained that the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing." *Id.* (quoting *Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022)) (cleaned up).

The district court emphasized that its decision to deny summary judgment turned on disputes of fact: "her ultimate success on this claim will turn on whether a jury believes Anderson's version of the facts, in which Anderson was not resisting and not a threat to anyone." *Id.* at 14 (citing *Patel*, 959 F.3d at 1343). Finding the state-law battery claim against the County was coextensive with Fourth Amendment excessive force claims, the district court denied its motion for summary judgment based on the same reasoning as its decision regarding Rodriguez. *Id.* at 15. Rodriguez and Miami-Dade County now seek interlocutory review of the denial of their request for summary judgment.

# SUMMARY OF THE ARGUMENT

As discussed above, the Court should dismiss this appeal for lack of jurisdiction. Both arguments, at their core, are fact-related disputes about whether the evidence could support a finding that Rodriguez used excessive force. Those arguments are not reviewable in an interlocutory appeal. Even if it exercises jurisdiction, the Court should affirm the well-reasoned decision of the district court.

With respect to the first issue, a reasonable jury could conclude that Ms. Anderson had committed no crime and posed no danger when Rodriguez violently struck her across the face. A jury could also find, as did the district court, that she never resisted arrest or attempted to flee, and she posed no threat of safety to the officers. This is particularly true for the two to three minutes that Rodriguez dragged her through the airport terminal by her hair all while she remained handcuffed, subdued and compliant. The force used was grossly disproportionate to any concerns facing the officers, and so the district court correctly rejected the suggestion that it was "de minimis."

The district court also identified a broad legal principle that put Rodriguez on notice that his conduct violated the Constitution. Any officer should know that using gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands violates the Fourth Amendment. This Court has held as much on multiple occasions, and it should do so again here.

# ARGUMENT

## I. THIS COURT LACKS JURISDICTION BECAUSE THE APPEAL CHALLENGES THE EVIDENTIARY SUFFICIENCY OF THE EXCESSIVE FORCE CLAIM

### A. Standard of Review

This Court reviews jurisdictional issues de novo. *English v. City of Gainesville*, 75 F. 4th 1151, 1155 (11th Cir. 2023) (citing *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 848 (11th Cir. 2022)).

### B. Argument on the Merits

The issues raised in this appeal are issues of evidentiary sufficiency. In their briefing before this Court, Appellants primarily argued that their use of "de minimis" force was reasonable under the circumstances. *See* Initial Br. at 8-9, 14-24. The district court found that factual disputes precluded summary judgment on those grounds, (Doc. 84 at 13, 14), and that decision is not reviewable under the collateral order doctrine. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995) (explaining that a district court's determination that the summary judgment record raised a genuine issue of fact concerning defendants' actions is not an appealable decision).

In their second argument on appeal, Appellants claim that Ms. Anderson failed to prove that Rodriguez's violation of her Fourth Amendment rights was clearly established. Initial Br. at 25. They do not contest that the broad legal principle articulated in *Patel*—"a police officer violates the Fourth Amendment, and

is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands"—was clearly established at the time of incident. *See id.* at 30-31.

Appellants nevertheless argue that this principle does not govern because of the specific facts of this case. *Id.* In their view, *Patel* "would not put every objectively reasonable officer on notice that using a single slap to subdue a plaintiff who ignored several lawful commands and approached the officer within inches of his face." *Id.* at 32. Nor, they claim, "would it have put every objectively reasonable officer on notice that it would violate the Fourth Amendment to grab an arrestee's hair and turn her head forward after she slowed down while she was being escorted and turning her head to yell out questions." *Id.*

These arguments do not raise pure legal issues so much as they highlight the factual disputes between the parties. Appellants claim it is "undisputed" that law enforcement had a "legal duty" to take Ms. Anderson into custody at the terminal. Initial Br. at 13. However, Ms. Anderson argued below that she had not disobeyed any command or broken any law when Rodriguez initially struck her. (Doc. 80 at 3). Moreover, as the district court found, she was never told she was under arrest until they arrived at the patrol car, at which point Ms. Anderson disputed that she had done anything that would warrant the imposition of criminal charges. (Doc. 84 at 6).

A jury could also choose to disbelieve that law enforcement was entitled to arrest her. Appellants, after all, do not defend the validity of the initial charges brought against her, which were later dropped. *See* Initial Br. at 13-33. Nor do they defend the initial rationale of Rodriguez, who falsely asserted that Ms. Anderson headbutted and pushed him. *See id.* Instead, they offer a post-hoc justification for her arrest: Ms. Anderson, they claim, disobeyed lawful commands and thereby violated section 843.02, Florida Statutes. This is debatable.

As the district court observed, Ms. Anderson could not have lawfully followed all of Rodriguez's commands because he affirmatively instructed her to punch an airline employee seven or eight different times. (Doc. 84 at 3). At other moments, she was not disobeying commands but asking legitimate questions about how she would get back to Chicago or where they would go if she accompanied them. (Doc. 75, Alvarez BWC at 4:19–:59).

Even if the situation necessitated the use of force, which Ms. Anderson disputes, the district court found it "unclear that the amount of force Rodriguez used when he struck her was proportionate with that need." (Doc. 84 at 12). Though Appellants euphemistically describe the forceful strike to her face as a "single slap" or a "single distractionary blow," this characterization does not accurately describe the force used by Rodriguez, who wound his body up and put all his weight into the blow.

With respect to the hair-pulling, the court found there was "certainly no need for any application of force when Anderson was already handcuffed and being escorted out of the terminal," particularly since she was in no way disobeying or posing a risk to the officers. *Id.* The district court described the claim that she suffered "practically no injury" as "inaccurate," since Ms. Anderson "suffered swelling and redness to her face, vomited due to a panic attack, and ultimately visited the University of Illinois-Chicago Hospital emergency room due to her injuries." *Id.* It ultimately concluded that "a genuine dispute of material fact exists as to whether Rodriguez acted unconstitutionally." *Id.* at 13.

Appellants cannot and do not dispute that the broad constitutional principle articulated in *Patel* predated the conduct of Rodriguez. Left without a pure legal issue as a jurisdictional hook, Appellants challenge the sufficiency of the evidence supporting the conclusion that Rodriguez used gratuitous and excessive force against a suspect who was under control and not resisting. Doing so runs headlong into binding precedent that precludes this Court from exercising jurisdiction to review inferences drawn by the district court or its determination that genuine disputes of fact preclude the entry of summary judgment. *E.g.*, *Hall v. Flournoy*, 975 F. 3d 1269, 1278 (11th Cir. 2020); *English*, 75 F. 4th at 1155. Under that precedent, the Court should dismiss this appeal and remand the case to the district court for trial on the merits.

## II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT GENUINE DISPUTES OF MATERIAL FACT PRECLUDED SUMMARY JUDGMENT

### A. Standard of Review

This Court reviews de novo the denial of qualified immunity at summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Nelson*, 89 F.4th at 1295. Summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Patel*, 959 F.3d at 1336 (quoting Fed. R. Civ. P. 56(a)). A genuine dispute exists if a reasonable jury could return a verdict for the nonmoving party. *Id*. at 1337.

### B. Argument on the Merits

This Court has long rejected claims of qualified immunity where the force was used after the plaintiff was handcuffed or otherwise subdued. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1327-28 (11th Cir. 2017) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands"); *see also Saunders v. Duke*, 766 F.3d 1262, 1269-70 (11th Cir. 2014). The "same rationale applies to the

use of gratuitous force when the excessive force is applied prior to the handcuffing but in the course of the investigation and arrest." *Stephens*, 852 F.3d at 1328 n.33.

The Court has likewise rejected simplistic arguments that suggest the use of "de minimis" force requires the entry of summary judgment. As the Court explained in *Saunders*, the de minimis force principle "has never been used to immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat." *Saunders*, 766 F.3d at 1270.

"To conclude that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses the core judicial inquiry, which is the nature of the force." *Saunders*, 766 F.3d at 1270; *see also Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021) ("A plaintiff who suffers only de minimis injury does not necessarily lack a claim for excessive force [during arrest] under § 1983"). Evaluating whether force is excessive requires a district court to look to "the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022).

The district court made no error in conducting this inquiry. This Court has "repeatedly held that less force is appropriate when the crime at issue is a misdemeanor, and the suspect does not pose a threat or attempt to flee." *Richmond*, 47 F.4th at 1183 (collecting cases). The district court in this case carefully

considered the body camera footage and concluded that, when viewed in the light most favorable to Ms. Anderson, "there is a genuine dispute of material fact as to whether there was any need for the application of force when Rodriguez struck Anderson," who was under control and not resisting the officers. (Doc. 84 at 12). Nor was there any justification for dragging her by the hair for two to three minutes while leading her out of the airport.

Setting aside the lack of justification, the force used was hardly de minimis. The video shows the blow to her face whipped her head around and caused her to stagger backwards. The hair-pulling also caused her to double over and cry out in pain. Ms. Anderson "suffered swelling and redness to her face, vomited due to a panic attack, and ultimately visited the University of Illinois-Chicago Hospital emergency room due to her injuries." *Id.* Thus, the district court did not err when it concluded that neither the force nor the injuries it caused were de minimis. *See Stephens*, 852 F.3d at 1308 (officer not entitled to qualified immunity from excessive force claim where he "unexpectedly slapped" a Bluetooth device from a plaintiff's ear and punched him in the chest "for no reason").

The district court also pointed to multiple disputes of fact that precluded the entry of summary judgment. Those disputes include whether, as Appellants claim on appeal, Ms. Anderson "verbally and physically resisted" the "commands" of Rodriguez. *Compare* Initial Br. at 16 *with* Doc. 84 at 14 (the "ultimate success on

this claim will turn on whether a jury believes Anderson's version of the facts, in which Anderson was not resisting and not a threat to anyone"). The disputes also include whether Ms. Anderson had committed any crime in the first place, which she disputed below. (Doc. 80 at 3). Because these factual disputes raised jury questions, the district court correctly denied summary judgment.

Finally, Ms. Anderson identified a broad statement of constitutional principle that clearly establishes a constitutional right, that is, "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Patel*, 959 F.3d at 1343. *Patel* predates the conduct of Rodriguez and gave him notice of a fact that should be obvious to any officer: the use of gratuitous and excessive force on a citizen like Ms. Anderson, who is not resisting or otherwise posing any threat to officer safety, violates the Constitution.

This does not mean that Rodriguez is liable. It only means that Ms. Anderson gets to present her case to a jury. And, as the district court found, "her ultimate success on this claim will turn on whether a jury believes Anderson's version of the facts, in which Anderson was not resisting and not a threat to anyone." (Doc. 84 at 14). Given the genuine disputes of material fact, this Court should affirm the district court and remand this case for a trial on the merits.

## CONCLUSION

For the reasons above, this Court should dismiss this case for lack of jurisdiction, or in the alternative, affirm the denial of summary judgment and remand this case to the district court for a jury trial

DATED this 21st day of January, 2025.

Respectfully submitted,

/s/ Andrew B. Greenlee
Andrew B. Greenlee, Esq.
Florida Bar No. 96365
ANDREW B. GREENLEE, P.A.
401 East 1st Street, Unit 261
Sanford, Florida 32772
(407) 808-6411
andrew@andrewgreenleelaw.com
*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court served on all parties through the CM/ECF System.

*/s/ Andrew B. Greenlee*
Andrew B. Greenlee, Esq.


## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this Answer Brief complies with the word limit of Federal Rule of Appellate Procedure 27 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,405 words.

*/s/ Andrew B. Greenlee*
Andrew B. Greenlee, Esq.