# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

PARIS ANDERSON,

*Plaintiff-Appellee,*

vs.

ANTHONY RODRIGUEZ and MIAMI-DADE COUNTY,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Florida
No. 21-CV-24438-KMW

## REPLY BRIEF FOR APPELLANTS

RHEA P. GROSSMAN, P.A.
2650 West State Road 84, Suite 103
Fort Lauderdale, Florida 33312
(954) 587-8488

GERALDINE BONZON KEENAN
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

RHEA P. GROSSMAN
*Counsel for Anthony Rodriguez*

ZACH VOSSELER
Assistant County Attorney
*Counsel for Miami-Dade County*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the Appellants certify that the following persons and entities may have an interest in the outcome of this case:

1. Anderson, Paris, *Plaintiff-Appellee*

2. Andrew B. Greenlee, P.A., *Counsel for Plaintiff-Appellee*

3. Blake, Stanford, *Mediator*

4. Bonzon Keenan, Geraldine, *Miami-Dade County Attorney*

5. Greenlee, Andrew B., *Counsel for Plaintiff-Appellee*

6. Grossman, Rhea, *Counsel for Defendant-Appellant Anthony Rodriguez*

7. Hale & Monico, LLC, *Counsel for Plaintiff-Appellee*

8. Louis, Hon. Lauren Fleischer, *United States Magistrate Judge*

9. Marx, Jason, *Counsel for Plaintiff-Appellee*

10. Miami-Dade County, *Plaintiff-Appellant*

11. Miami-Dade County Attorney's Office, *Counsel for Defendant-Appellant Miami-Dade County*

12. Rhea P. Grossman, P.A., *Counsel for Defendant-Appellant Anthony Rodriguez*

13. Rodriguez, Anthony, *Defendant-Appellant*

14. Sherris Legal, P.A., *Counsel for Plaintiff-Appellee*

15. Sherris, Mary, *Counsel for Plaintiff-Appellee*

16. Vosseler, Zach, *Counsel for Defendant-Appellant Miami-Dade County*

17.   Williams, Hon. Kathleen M., *United States District Judge*

No corporation has an interest in the outcome of this case.

 /s/ *Rhea P. Grossman*
Rhea Grossman
*Counsel for Appellant Anthony Rodriguez*

 /s/ *Zach Vosseler*
Zach Vosseler
Assistant County Attorney
*Counsel for Appellant Miami-Dade County*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ....................... C1

TABLE OF AUTHORITIES ......................................................... ii

REPLY BRIEF FOR APPELLANTS

I.   The Court has jurisdiction because the appeal raises
     issues of law.................................................................1

II.  The two uses of force were *de minimis*, so *Graham*
     does not apply ............................................................... 9

III. The principle of law upon which Anderson relies is
     too general to clearly establish a constitutional right ..................... 12

CONCLUSION ..................................................................... 17

CERTIFICATES .................................................................... 18

i

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................. 13

*Baxter v. Roberts*,
  54 F.4th 1241 (11th Cir. 2022) ............................................. 4, 5, 13

*Behrens v. Pelletier*,
  516 U.S. 299, 313 (1996) .............................................................. 2

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) .................................................................. 14

*C.E.L. v. State*,
  24 So. 3d 1181 (Fla. 2009) ............................................................5

*Cantu v. City of Dothan*,
  974 F.3d 1217 (11th Cir. 2020) ............................................ 13, 14, 16

*City of Tahlequah v. Bond*,
  595 U.S. 9 (2021) ..................................................................... 14

*Cottrell v. Caldwell*,
  85 F.3d 1480 (11th Cir. 1996) .........................................................1

*Croom v. Balkwill*,
  645 F.3d 1240 (11th Cir. 2011) ................................................. 12, 13

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018).............................................................. 13, 14

*Donald v. Norris*,
  — F.4th — (11th Cir. Mar. 13, 2025) .......................................... 1, 2, 3

*English v. City of Gainesville*,
  75 F.4th 1151 (11th Cir. 2023) ........................................................ 2

*Evans v. Stephens*,
  407 F.3d 1272 (11th Cir. 2005) (en banc) ..........................................7, 8

*Fleming v. United States*,
  127 F.4th 837 (11th Cir. 2025)........................................................1

*Gates v. Khokhar*,
    884 F.3d 1290 (11th Cir. 2018) ........................................................3

*Goebert v. Lee County*,
    510 F.3d 1312 (11th Cir. 2007) ................................................. 15, 16

*Graham v. Connor*,
    490 U.S. 386 (1989) ............................................... 1, 9, 10, 11, 12, 13

*Hadley v. Gutierrez*,
    526 F.3d 1324 (11th Cir. 2008) ........................................................7

*Hoffman v. Delgado*,
    No. 23-13213, 2025 WL 25856 (11th Cir. Jan. 3, 2025) ........................ 9, 10

*Jones v. City of Dothan*,
    121 F.3d 1456 (11th Cir. 1997) ................................................. 8, 13, 16

*Jones v. Fransen*,
    857 F.3d 843 (11th Cir. 2017) ........................................................ 15

*King v. Pridmore*,
    961 F.3d 1135 (11th Cir. 2020) ....................................................... 12

*Loftus v. Clark-Moore*,
    690 F.3d 1200 (11th Cir. 2012) ................................................. 13, 14, 15

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ............................................................ 3, 13, 16

*Nelson v. Thompkins*,
    89 F.4th 1289 (11th Cir.), *cert. denied sub nom. Sellers v. Nelson*,
    145 S. Ct. 178 (2024) ............................................................ 2, 3

\* *Nolin v. Isbell*,
    207 F.3d 1253 (11th Cir. 2000) ................................................. 2, 3, 9

*Patel v. City of Madison*,
    959 F.3d 1330 (11th Cir. 2020) ................................................. 14, 15, 16

*Powell v. Snook*,
    25 F.4th 912 (11th Cir. 2022) ....................................................... 13

*Prosper v. Martin*,
    989 F.3d 1242 (11th Cir. 2021) ................................................. 15, 16

*Rivas-Villegas v. Cortesluna*,
  595 U.S. 1 (2021) ......................................................................... 14

*Saucier v. Katz*,
  533 U.S. 194 (2001) ......................................................................11

*Scott v. Harris*,
  550 U.S. 372 (2007) ...............................................................2, 4, 6

*Spencer v. Benison*,
  5 F.4th 1222 (11th Cir. 2021) ..........................................................3

*Stalley v. Cumbie*,
  124 F.4th 1273 (11th Cir. 2024) ..................................................... 16

\* *Vinyard v. Wilson*,
  311 F.3d 1340 (11th Cir. 2002) ............................................. 10, 11, 12

*Williams v. Mallet*,
  707 F. Supp. 3d 1340 (S.D. Fla. 2023) .............................................. 13

STATUTES

Fla. Stat. § 843.02 ...........................................................................5

# REPLY BRIEF FOR APPELLANTS

Paris Anderson asks this Court to hold that a single slap that resulted in minor, self-treated swelling and a few seconds of hair grabbing that resulted in no discernible physical injury at all were not only unconstitutional, but were so obviously unconstitutional that every officer in Anthony Rodriguez's position would have known that they violated the Fourth Amendment. Along the way, she doubles down on the district court's erroneous decision denying qualified immunity, which superfluously applied *Graham v. Connor*,[1] disregarded this Court's *de minimis* force precedent, and ignored the Supreme Court's repeated demands for specificity in defining clearly established constitutional rights.

This Court should accept interlocutory jurisdiction over this appeal, which raises multiple legal issues related to qualified immunity, and then reverse. Rodriguez's conduct was no more severe than any other use of *de minimis* force this Court has deemed permissible, and it did not violate clearly established law.

## I.   The Court has jurisdiction because the appeal raises issues of law.

At the outset, Anderson's jurisdictional challenge must be rejected. "As an immunity doctrine—crafted to shield defendants from trial—[qualified immunity] is a natural fit for interlocutory appeal." *Fleming v. United States*, 127 F.4th 837, 854 (11th Cir. 2025). This Court exercises "interlocutory jurisdiction over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds." *Donald*

---

[1]   490 U.S. 386 (1989).

*v. Norris*, — F.4th —, slip op. at 7 (11th Cir. Mar. 13, 2025) (quoting *Cottrell v. Cald-well*, 85 F.3d 1480, 1484 (11th Cir. 1996)). Where an appellant raises an "'abstract issue of law' related to qualified immunity, 'typically, the issue whether the federal right allegedly infringed was clearly established,'" the Court may decide that issue *and* any evidentiary sufficiency issue. *Nelson v. Thompkins*, 89 F.4th 1289, 1296 (11th Cir.) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)), *cert. denied sub nom. Sellers v. Nelson*, 145 S. Ct. 178 (2024). Rodriguez's appeal raises three legal issues.

First, his undisputed conduct—a single open-hand slap to Anderson's face and grabbing her hair—does not even implicate the Fourth Amendment because both acts constitute *de minimis* uses of force. Initial Br. 12–17, 19–25. This Court has accepted jurisdiction over the argument that "the application of *de minimis* force does not, as a matter of law, constitute excessive force" before, and it should do so again. *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) ("[T]he reasonableness of [an officer]'s actions … is a pure question of law."); *cf. English v. City of Gainesville*, 75 F.4th 1151, 1156 (11th Cir. 2023) (dismissing appeal for lack of jurisdiction because it *did not* "raise questions about whether certain undisputed conduct violated the Fourth Amendment").

The second distinct legal issue is whether the district court misapprehended the *de minimis* force exception by applying the wrong legal standard, analyzing only the factors enumerated in *Graham*. Initial Br. 18–19. This Court has previously reversed district court orders that applied the wrong legal standard, including by "erroneously reject[ing] the *de minimis* force principle expressed in" its precedent. *Nolin*, 207 F.3d

at 1258–59; *see also Donald*, *supra*, slip op. at 7, 21 (accepting jurisdiction over, and then reversing, denial of motion for summary judgment raising qualified immunity where "the district court applied the wrong legal standard"). It should do so again here.

And the third legal issue is that the law was not clearly established in a manner that signaled to Rodriguez that his actions were blatantly unconstitutional. Initial Br. 25–33. This Court routinely exercises jurisdiction over interlocutory appeals where an officer challenges whether a constitutional right "was clearly established when [he] allegedly violated it." *Nelson*, 89 F.4th at 1296; *see also Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021) (same). Here, Rodriguez argued that Anderson and the district court both failed to cite case law with indistinguishable facts finding that similar conduct violated the Constitution and failed to explain how their chosen general principles of law applied with obvious clarity to the force he used. *See Gates v. Khokhar*, 884 F.3d 1290, 1302 (11th Cir. 2018) (reversing denial of qualified immunity where district court "fram[ed] its inquiry more broadly than the [governing] standard permits, … running afoul of the Supreme Court's oft-repeated directive 'not to define clearly established law at a high level of generality'" (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015))). Rodriguez has raised legal issues, so this Court has jurisdiction.

⁕⁕

Once the Court accepts jurisdiction, it should "conduct [its] own factual analysis," rather than adopting the district court's inadequate one, and review the first qualified immunity question anew, as that first question is "part of the core qualified immunity analysis." *Nelson*, 89 F.4th at 1296 (cleaned up). After it reviews the clear

3

video footage of Anderson's encounter with Rodriguez, the Court should reject her claim that she obeyed commands and did not resist, as it is contradicted by the video footage. The Court should likewise reject her attempt to exaggerate the severity of her physical injuries, as it is contradicted by her own sworn testimony.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott*, 550 U.S. at 380. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Ibid.* In cases like this one "where a video in evidence obviously contradicts the nonmovant's version of the facts, [the Court] accept[s] the video's depiction instead of the nonmovant's account and view[s] the facts in the light depicted by the videotape." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (cleaned up).

Anderson's version of the facts "is so utterly discredited" by the body-worn camera videos that no reasonable jury could have believed it. *Scott*, 550 U.S. at 380. Consequently, the district court erred when it discounted the videos to find a disputed issue of fact, adopting Anderson's incongruous version of events.

For starters, although Anderson argues in her brief that Rodriguez lacked the authority to compel her to do anything, at the district court level she did not dispute the *fact* that Rodriguez had the legal duty to escort her out of the terminal. In his statement of material facts, he asserted that he and Alvarez "were aware that once an airline manager decided that the airline would no longer honor a passenger's ticket,

it is their duty as Airport District officers to escort her out of the secure side of the terminal." App. 1137 ¶ 23. Anderson explicitly conceded that this factual assertion was "[u]ndisputed." App. 1169 ¶ 23. Based on that concession, the first element of the crime of resisting without violence—that "the officer was engaged in the lawful execution of a legal duty"—was satisfied. *C.E.L. v. State*, 24 So. 3d 1181, 1185 (Fla. 2009) (citing Fla. Stat. § 843.02). Similarly, the second element—"the defendant's action, by [her] words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty"—was also met. *Id.* at 1186. In *Baxter*, the Court held that this element was "clear" where bodycam video showed the plaintiff ignoring a command to step out of his truck and pulling his keys away from the officer. 54 F.4th at 1266–67. The videos here show Anderson displaying a similar "'combination' of both verbal and physical resistance." *Id.* at 1267; *see generally* Rodriguez BWC 1, at 3:44–4:59; Alvarez BWC, at 4:14–5:29; Vega BWC, at 2:03–:09. She did not move to get her bags in response to Rodriguez's commands.[2] She threatened to punch the airline employee "in his fucking face" and "[g]ive y'all a reason to lock me up." And she stepped toward Rodriguez while shouting that he was "acting like you white when you really black," and taunting, "Don't walk up on me, for real. What you wanna do?" In fact, she "*admits* she should not have approached Rodriguez." App. 1139 ¶ 54 (emphasis added); *see* App. 1171 ¶ 54 ("Undisputed."). In light of what the videos depict,

---

[2] While Anderson, like the district court, harps on Rodriguez's subsequent statements provoking her to punch the airline employee, the videos show that she did not comply with *any* of his instructions to get her bags and go.

the district court should not have relied on the visible fictions that Anderson did not resist, obeyed commands, and did not pose a threat. *See Scott*, 550 U.S. 380–81 (holding that this Court "should not have relied on [the] visible fiction" that was the plaintiff's version of events; "it should have viewed the facts in the light depicted by the videotape"). These still images showing her advancing on Rodriguez, taken in the seconds before he used force, do not depict an individual who was compliant, non-threatening, or obeying commands:



Vega BWC, at 2:07, 2:09.

The district court also erred in overstating Anderson's minimal injury by disregarding her own description of it. A court's "duty to read the record in the non-movant's favor stops short of not crediting his testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc). "When a party has given clear answers to unambiguous questions which negate the existence of material fact, that party cannot thereafter create such an issue with an affidavit" or, as here, with argument "that merely contradicts, without explanation, previously given clear testimony." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (cleaned up).

Anderson gave clear answers to unambiguous questions about the physical injury she suffered:

Q. … Starting with your physical damage, please describe in your own words the physical injuries you suffered as a result of the incident in this lawsuit.
A. The face—my face was swelled, like I said, and it was red, that's physical.
Q. Okay. Anything else?
A. No.

App. 241:6–13. Contrary to what Anderson says in her brief, Rodriguez does not "dispute" her injuries; he *agrees* that she testified her only physical injury was redness and swelling to her face from the slap. He additionally agrees that she did not testify that she suffered any physical injury from the hair pulling. As for the claimed panic attack and vomiting (neither of which is depicted in any video footage, which ends twelve minutes after the first use of force, *see* Alvarez BWC, at 5:29–17:14) or her emotional distress, these are not *physical* injuries.

When asked unambiguous questions about her visit to the emergency room, Anderson also gave clear answers that she did not receive medical treatment. She testified that she treated herself using over-the-counter remedies:

> Q. … [W]hat medical treatment did you—what were you treated for?
> A. Well, I wasn't really treated for anything. I just went to—for swelling on my face. …
> Q. … Did that get better?
> A. Yes, with the treatment.
> Q. Okay. And what treatment did you get?
> A. It was self-treatment. I went and got me some witch hazel, peroxide, and stuff like that to take the swelling down.

App. 238:18–24, 239:10–15. The Court must accept this testimony because it is *Anderson's* testimony. She cannot cherry-pick portions to concoct a narrative that she deems most helpful, generically mentioning a visit to an emergency room in an effort to exaggerate the severity of her injury. "[W]hen conflicts arise between the facts evidenced by the parties," this Court credits "the nonmoving party's *version*." *Evans*, 407 F.3d at 1278. There is no conflict between facts about the treatment Anderson received because the only fact is her testimony that she didn't receive any.[3] Rodriguez accepts that testimony and so must this Court.

---

[3]  Even if she had received some treatment at the hospital, that would not make the force Rodriguez used more than *de minimis*. *See Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding that officer used minimal force even though plaintiff "received minor medical treatment for pain in his arthritic knee three days after the incident").

## II. The two uses of force were *de minimis*, so *Graham* does not apply.

Even if the Court declines to reassess the clear video footage to frame what happened at the airport, Rodriguez remains entitled to qualified immunity (and Miami-Dade County remains entitled to summary judgment) because the force he used was *de minimis* as a matter of law. The initial brief recounted this Court's long precedential history invoking "the principle that the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin*, 207 F.3d at 1257; *see* Initial Br. 14–24. Anderson's brief addresses none of those decisions. Rather, she repeats the district court's reasoning under *Graham* that "'there is a genuine dispute of material fact as to whether there was any need for the application of force when Rodriguez struck Anderson,' who was under control and not resisting the officers." Answer Br. 21 (quoting App. 1237). Her argument bypasses a distinct aspect of excessive force jurisprudence and betrays a misunderstanding of the law.

*Graham* "did not establish a precise test for identifying excessive force." *Nolin*, 207 F.3d at 1255 n.2. This Court's decisions have "refined *Graham* by concluding that … a court may conclude that an officer retains qualified immunity when the facts show a minimal amount of force combined with a minor or nonexistent injury." *Id.* at 1257 n.3. Given that *Graham* is not the be-all and end-all for determining excessive force, the Court has engaged in a "repeated, post-*Graham* application of the [*de minimis* force] principle," a practice that continues to this day. *Id.* at 1257; *see, e.g.*, *Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at *4 (11th Cir. Jan. 3, 2025) (holding that

9

officer used *de minimis* force when he pushed the plaintiff against a wall, grabbed his wrists, pushed him towards an exit, struck his camera out of his hands, and caused him pain).

An officer's *de minimis* use of force—force so minor that it does not implicate the Fourth Amendment—does not become more than *de minimis* merely because the *Graham* factors weigh in a plaintiff's favor. *See Vinyard v. Wilson*, 311 F.3d 1340, 1347–49 & 1348 n.13 (11th Cir. 2002). *Vinyard* involved four instances of force: (1) the officer grabbed the plaintiff's arm and "jerked her out of her chair"; (2) he pulled over during transport, opened the back door, and grabbed her, bruising her arm and breast; (3) he pulled her head back by her hair and sprayed her face with two or three bursts of pepper spray; and (4) upon arriving at the jail, he dragged her inside by her shirt, her arm, or her hair. *Id.* at 1343. The Court applied *Graham* only to the pepper-spraying incident and found that all three factors weighed in the plaintiff's favor—her offenses were minor; she posed no threat to anyone's safety; and she never actively resisted arrest or attempted to flee. *Id.* at 1347–48.

But the same could be said for the force used before and after the pepper spray—over the course of their encounter, the crimes of arrest never changed, the threat never changed, and the plaintiff never resisted or fled. Yet the Court deemed the first and fourth instances of force—jerking and grabbing the plaintiff, including possibly by her hair while she was handcuffed—*de minimis*; it also recognized a "strong argument" that the second use of force—grabbing her arm hard enough to bruise her—was too.

10

*Id.* at 1347–49 & 1348 n.13.[4]

So, how could it be that the officer was entitled to qualified immunity for some uses of force but not others when the *Graham* factors always weighed in the plaintiff's favor? The answer lies in the Court's appropriate recognition of the *de minimis* force exception, consistent with the Supreme Court's "observation that 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Id.* at 1348 n.13 (quoting *Saucier v. Katz*, 533 U.S. 194, 209 (2001)). Minor applications of force causing minimal or no injury do not trigger a *Graham* analysis, notwithstanding the direction its factors may point.

The Court should conclude that the exception applies to both of Rodriguez's uses of force. Even assuming the district court correctly found that all three *Graham* factors favored Anderson, it still fell to her to demonstrate that the force exceeded the *de minimis* threshold as a matter of law.[5] She fails to meet that burden. She cites no authority supporting the notion that a single open-handed slap or grabbing someone's hair for about twelve seconds constitutes more than *de minimis* force, and she counters none of the caselaw authorizing the same or more severe uses of force that

---

[4] The Court even deemed the fourth instance of force *de minimis* despite the officer saying, just minutes earlier—and in response to the plaintiff's complaint of breathing trouble—"I hope you die, because when I get you to the jail I'm going to beat the shit out of you and there's nothing you can do." *Vinyard*, 311 F.3d at 1344.

[5] To be sure, viewing the facts in the light depicted by the videos, the *Graham* factors do not all weigh in Anderson's favor. Although the crime of resisting an officer without violence is a minor one, Anderson both verbally and physically resisted Rodriguez's commands and posed a threat to him when she approached him so closely she was practically touching his face with her head.

Rodriguez offered in his brief. Because the force he used was *de minimis* as a matter of law, it did not violate the Fourth Amendment. The district court's failure to recognize this fundamental principle and apply the correct legal standard mandates reversal.

## III. The principle of law upon which Anderson relies is too general to clearly establish a constitutional right.

Anderson gives remarkably little attention to her burden of demonstrating that Rodriguez's specific conduct violated a clearly established constitutional right. Tossing aside this Court's admonition that "if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate," *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020), her brief abandons any effort to identify a factually similar case.

No binding precedent clearly establishes that Rodriguez's actions violated the Fourth Amendment. He has found no decision by this Court, the Supreme Court, or the Florida Supreme Court holding that a slap or that hair-pulling was an unconstitutional use of force. Conversely, this Court's *de minimis* force precedent establishes that force at least as severe as—if not more severe than—Rodriguez's conduct does not violate the Fourth Amendment, even when *Graham* was not applied or where its factors favored the plaintiff. Of course, there's *Vinyard*, which held that jerking the plaintiff out of a chair and dragging her in handcuffs by her shirt, arm, or hair were *de minimis* uses of force, and suggested that grabbing her arm causing bruising may have been, as well—despite all *Graham* factors favoring the plaintiff. 311 F.3d at 1348 n.13. Similarly, in *Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011), an officer used *de*

12

*minimis* force when she pushed an elderly arthritic woman to the ground and held her down with a foot or knee on her back for ten minutes "*even though* [she] *wasn't* under arrest and *wasn't* suspected of any crime *at all*." *Williams v. Mallet*, 707 F. Supp. 3d 1340, 1363 (S.D. Fla. 2023) (emphases in original). And in *Jones v. City of Dothan*, officers permissibly "slammed" the plaintiff against a wall, kicked his legs apart causing pain to his arthritic knee, and made him raise his arms above his head causing pain from a prior stroke, yet the Court didn't discuss *Graham* at all. 121 F.3d 1456, 1460–61 (11th Cir. 1997). These authorities highlight that "[i]nstead of clearly establishing the law against [Rodriguez], binding precedent clearly establishes it in his favor." *Powell v. Snook*, 25 F.4th 912, 924 (11th Cir. 2022) (cleaned up).

Anderson stakes her entire defense of the district court's order on a two-sentence paragraph discussing the second method of demonstrating clearly established law— but her argument comes up short. This method "requires a plaintiff to identify a 'legal principle that clearly prohibits the officer's conduct in the particular circumstances before him.'" *Baxter*, 54 F.4th at 1268 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). It's not enough just to point to some broad-sweeping principle; "[g]eneral propositions from earlier decisions will not do." *Cantu v. City of Dothan*, 974 F.3d 1217, 1232 (11th Cir. 2020). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Thus, to defeat qualified immunity, Anderson must show that the principle was "established with obvious clarity by the case law so that every objectively reasonable government

official facing the circumstances would know that the official's conduct," that is, a single open-handed slap and a brief instance of hair pulling, "violate[d] federal law when [Rodriguez] acted." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012) (cleaned up). The law did not give Rodriguez the requisite warning.

Anderson's argument rests on a brief reference to *Patel v. City of Madison*, which stated that "a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." Answer Br. 22 (quoting 959 F.3d 1330, 1343 (11th Cir. 2020)). This, however, is nothing more than a generalized principle of constitutional law that undermines the Supreme Court's "repeated[]" warnings "not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). "It is not enough that a rule be suggested by then-existing precedent; the 'rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Ibid.* (quoting *Wesby*, 583 U.S. at 63).

*Patel*'s standard is too broadly stated to control the inquiry. In certain "obvious" cases, general standards may be sufficient to clearly establish a right, even without a body of factually similar case law. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). But application of that exception requires "extreme factual circumstances," where the official's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official." *Cantu*, 974 F.3d at 1232

(cleaned up). "To do that in an excessive force case, a plaintiff must show that the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point." *Id*. at 1232–33 (cleaned up). But this is not an obvious case, and Anderson has never argued that Rodriguez's conduct so obviously violated the Fourth Amendment that no previous decision directly on point was required.

This Court's decision in *Jones v. Fransen* illustrates the flaw in her lack of specificity. 857 F.3d 843 (11th Cir. 2017). There, a plaintiff who was attacked by a police dog sought to overcome qualified immunity by invoking the general principle that the Fourth Amendment protects against the use of excessive force. *Id*. at 854. The Court rejected the approach, reasoning that such a broad principle "does not provide an officer with any guidance as to what constitutes an excessive use of force" and therefore couldn't be "the type of 'broader, clearly established principle that should control the novel facts of the situation.'" *Id*. at 854–55 (cleaned up) (quoting *Loftus*, 690 F.3d at 1204). Applying that logic here, *Patel*'s pronouncement that the Fourth Amendment protects against the use of "gratuitous and excessive force" does not provide an officer with any guidance as to what constitutes gratuitous and excessive force. As a result, the contours of a right to be free from gratuitous and excessive force were not "sufficiently clear that every reasonable officer" in Rodriguez's position "would have understood that what he was doing violates that right." *Prosper v. Martin*, 989 F.3d 1242,

1251 (11th Cir. 2021).[6]

The Supreme Court "has repeatedly emphasized that the clearly established law standard is a demanding one." *Cantu*, 974 F.3d at 1235 (collecting cases). "[T]o keep the standard demanding, the obvious clarity exception must be kept narrow." *Ibid.*; *accord Stalley v. Cumbie*, 124 F.4th 1273, 1293 (11th Cir. 2024) (Carnes, J., concurring) ("Only in the rarest of circumstances do we strip officials of qualified immunity based on broadly stated principles of law."). The exception would cease to be an exception at all, much less a narrow one, if Rodriguez's minor uses of force were deemed clear violations of the Fourth Amendment. If his force was egregious enough to satisfy a statement as general as "gratuitous and excessive force," it's difficult to fathom what *wouldn't* satisfy it. Such an absurd result flies in the face of this Court's own acknowledgement that "[t]he more general the statement of law is that puts the official on notice, the more egregious the violation must be before we will find that

---

[6] What's more, the facts of *Patel* are far too dissimilar from the facts of this case to clearly establish the law. "Close similarity of the facts between the cases is 'especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Cantu*, 974 F.3d at 1232 (quoting *Mullenix*, 577 U.S. at 12). As this Court has "stated often, 'public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.'" *Jones*, 121 F.3d at 1460 (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 (11th Cir. 1997) (en banc)). *Patel* involved an officer sweeping the legs out from under a "frail" older man with "unusual alacrity and horsepower" in a manner "that all but ensured that [his] head would break both of their falls," causing injuries that would "be felt for a lifetime." 959 F.3d at 1342, 1343 n.5, 1344. Rodriguez should not be expected to have inferred from those facts that his conduct in this case was obviously unlawful.

the official is not entitled to qualified immunity." *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007). "Gratuitous and excessive force" is an exceedingly general statement of law, but this conduct is not an egregious enough violation to match it.

At bottom, Anderson has not identified a sufficiently specific legal principle that would have placed every reasonable officer on notice that Rodriguez's actions violated the Fourth Amendment. Rodriguez is thus entitled to qualified immunity.

## CONCLUSION

Anderson has failed to show that Rodriguez used more than *de minimis* force as a matter of law, and she has failed to show that it was clearly established at the time that his undisputed conduct violated the Constitution. The district court's order denying the defendants' motion for summary judgment should be reversed.

Dated: March 13, 2025.

Rhea P. Grossman, P.A.

By: */s/ Rhea P. Grossman*
    Rhea P. Grossman
    Fla. Bar No. 92640
    2650 West State Road 84, Suite 103
    Fort Lauderdale, Florida 33312
    (954) 587-8488
    rheagrossman@comcast.net

*Counsel for Anthony Rodriguez*

Respectfully submitted,

Geraldine Bonzon Keenan
Miami-Dade County Attorney

By: */s/ Zach Vosseler*
    Zach Vosseler
    Assistant County Attorney
    Fla. Bar No. 1008856
    111 N.W. 1st Street, Suite 2810
    Miami, Florida 33128
    (305) 375-5151
    zach@miamidade.gov

*Counsel for Miami-Dade County*

## CERTIFICATES

1.     This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,642 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word in size 14 Equity font.

3.     On March 13, 2025, at approximately 11:00 p.m., I electronically filed this brief with the Court of Appeals and served a copy on all counsel of record via ECF. Because the final Federal Express pickup that day had already taken place, I served a hard copy of the brief on all counsel of record and four hard copies of the brief on the Court of Appeals via Federal Express the following day.

*/s/ Zach Vosseler*
Zach Vosseler
Assistant County Attorney